**In re KELLY LYN FRANCHISE COMPANY, INC., Debtor.**

**SEALY UPTOWN, a Limited Partnership, Plaintiff,**

v.

**KELLY LYN FRANCHISE COMPANY, INC., Defendant.**

**Bankruptcy No. 382–01717.**
**Adv. No. 382–0436.**

United States Bankruptcy Court,
M.D. Tennessee,
Nashville Division.

Jan. 10, 1983.

---

442

C. Kinian Cosner, Jr., Cosner, Waldsch-midt & Crocker, Nashville, Tenn., for debtor.

L. Wearen Hughes, Bass, Berry & Sims, Nashville, Tenn., for plaintiff.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

This matter is before the court on the debtor's motion to extend time in which to assume or reject an unexpired lease. A hearing was held November 1, 1982[1] at which time proof was taken to resolve three issues: (1) whether the debtor timely assumed the lease; (2) whether the lease remains property of the estate and therefore remains subject to the jurisdiction of this court; and (3) whether a bankruptcy court has discretion to extend a court-established deadline within which to assume or reject an executory contract after the deadline has expired. After consideration of the stipulations, exhibits, testimony, briefs, arguments of the parties and the entire record, the court holds that court approval is necessary for the assumption or rejection of an executory contract. There being no court approval as yet in this case, the lease is still property of the estate and remains subject to the jurisdiction of this court. Because this court is without discretion to enlarge the time period within which to assume the lease, the debtor's motion to extend time must be DENIED. A hearing on rejection of the lease is set by the court for the 20th day of January, 1983 at 1:30 p.m. in Room 226, Customs House, 701 Broadway, Nashville, Tennessee.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

Kelly Lyn Franchise Company, Inc. ("debtor") is in the business of owning, operating and franchising figure salons. As part of its salon operations, Kelly Lyn is the lessee of property in Louisiana under a contract executed on or about March 24, 1981 with Hexalon Real Estate, Inc. Subsequent to the execution of the lease, the entire shopping center within which the debtor's property is located was acquired by Sealy Uptown ("Sealy"), and Sealy succeeded to all rights and obligations under the lease with debtor.

The lease obligates the debtor to pay a minimum monthly rental of $2,926.67, a common area maintenance charge of $146.33 per month, and all utilities. At the time of the hearing, the debtor had not paid the utility bills for the months of February through July, 1982 and the rental and common area maintenance charges remained unpaid for the months of April through August, 1982. Although the exact amount of arrearage is in dispute, prepetition arrearage of at least $5,800 has been stipulated. On May 28, 1982, Sealy informed the debtor that legal action was being considered to terminate the lease unless the arrearages were paid. Sealy's attorney wrote the debtor:

---

1. Subsequent to the hearing on November 1, 1982, the parties indicated to the court that a settlement had been reached and a proposed agreed order would be submitted in this adversary proceeding. Thereafter, by letter dated December 28, 1982, the court was informed that no settlement had been consummated and no agreed order would be forthcoming from the parties.

Please be advised that the landlord has elected to terminate the captioned lease. Pursuant to Louisiana law, you shall have five (5) days from the date of delivery of this notice to vacate the Demised Premises. If you do not vacate the Demised Premises by the end of said five day period, we will file an eviction suit against you immediately.

On May 29, 1982, the debtor filed a petition in this court seeking relief under Chapter 11 of the Bankruptcy Code. The automatic stay provisions of 11 U.S.C.A. § 362 (West 1979) prevented Sealy from pursuing the eviction action. On July 7, 1982, Sealy filed a complaint seeking relief from the stay and requested permission to terminate the lease and retake possession of the premises. By agreed order dated August 13, 1982, the debtor was granted until October 5, 1982 to remain in possession and October 5, 1982 was set as the deadline for assumption or rejection of the lease.

During August and September of 1982 the parties engaged in negotiations concerning assumption of the lease and a schedule for the payment of arrearages. Barbara Wellman, a principal officer of the debtor, testified that at all times the debtor desired to assume the lease, but the parties could not reach agreement on the exact amount of prepetition deficiency or upon a payment schedule. Ms. Wellman stated that it was her opinion that this lease is vital to the formation of a meaningful reorganization plan because the figure salon at this location is the only Kelly Lyn still open and operating at a profit. She further testified that substantial improvements have been made in the premises, including the addition of $55,000 in general fixtures and $25,000 in gymnasium equipment. For reasons unexplained to the court, negotiations broke off on or about September 15, 1982.

Sealy refused to accept the October rent payment which was tendered on October 5, the deadline set for assumption or rejection of the lease. Sealy advised the debtor that eviction proceedings were being initiated and the rent would be forwarded upon receiving instructions where it should be returned. On October 7, 1982, the debtor filed a motion seeking an extension of time within which to either assume or reject the lease. On October 15, 1982, Sealy filed suit in the First Judicial Circuit for Caddo Parrish, Louisiana seeking debtor's eviction. The Louisiana court entered a judgment on October 27, 1982 declaring the lease terminated and the debtor evicted.

■ The court rejects debtor's contention that the assumption of an unexpired lease can be accomplished by implication. Debtor relies upon cases decided under the old Bankruptcy Act which held that because "the Act does not provide any formal manner in which the trustee shall make the assumption, ... the assumption of an executory contract may be shown by acts or oral statements ... as well as by formal written declaration." *Nostromo, Inc. v. Fahrenkrog,* 388 F.2d 82, 84–85 (8th Cir.1968). *See also In re Steelship Corp.,* 576 F.2d 128, 132 (8th Cir.1978); *Brown v. Presbyterian Ministers Fund,* 484 F.2d 998, 1007 (3rd Cir. 1973); *In re McCormick Lumber Manufacturing Corp.,* 144 F.Supp. 804 (D.Or.1956). Debtor argues that its actions, specifically its tendering of October rent, manifested an actual assumption of the lease. The court finds, however, that even under the Act, the majority rule and the better rule was that judicial approval was required before allowing the assumption or rejection of an unexpired lease. *Local Joint Executive Board, AFL–CIO v. Hotel Circle, Inc.,* 419 F.Supp. 778 aff'd 613 F.2d 210 (9th Cir. 1980). *See also Bradshaw v. Loveless (In re American National Trust),* 426 F.2d 1059, 1064 (7th Cir.1970); *Texas Importing Co. v. Banco Popular de Puerto Rico,* 360 F.2d 582, 584 (5th Cir.1966); *Siegel v. Schulte (In re Wil-low Cafeterias, Inc.),* 111 F.2d 83 (2d Cir.1940). Assumption or rejection by implication or by action leads inevitably to the kind of confusion and uncertainty exemplified by this case. Moreover, the explicit requirement of court approval is now clear under the language of § 365(a) of the Code.

11 U.S.C.A. § 365(a) (West 1979) provides that "[e]xcept as provided in Sections 765 and 766 of this title and in subsections (b),

(c), and (d) of this section, the trustee, *subject to the court's approval,* may assume or reject any executory contract or unexpired lease of the debtor."[2] (emphasis added.) Thus, any uncertainty which may have existed under the Act concerning the requirement for court approval of assumption or rejection is no longer a serious issue under 11 U.S.C.A. § 365 (West 1979). Section 365(a) makes clear that an assumption of an executory contract "can only be effected through an express order of the court." 2 L. King, Collier on Bankruptcy ¶ 365.03 at 365–21 (15th ed. 1982). As the court correctly stated in *Frank C. Videon, Inc. v. Marple Publishing Co.,* 20 B.R. 933 (Bkrtcy. E.D.Pa.1982); "[a]ny assumption or rejection of an unexpired lease is devoid of validity without the court's approval." *Id.* at 934. Similarly, the court noted in *In re Price Chopper Supermarkets, Inc.,* 19 B.R. 462 (Bkrtcy.S.D.Cal.1982) that "since there is no automatic assumption or rejection in a Chapter 11 proceeding . . . any action must be presented for court approval." *Id.* at 467. *See also Gulf Petroleum v. Marrero,* 7 B.R. 586 (Bkrtcy.D.P.R.1980). *Contra In re Avery Arnold Construction Co.,* 11 B.R. 34, 35 (Bkrtcy.S.D.Fla.1981).[3]

The requirement of court approval furthers the Code policy of maximizing the value of the estate for the benefit of all creditors, while preserving certain rights of parties to contracts with the debtor. Assumption or rejection of an unexpired lease can have harsh consequences for creditors, landlords and debtors. In the instant case, the debtor contends that the lease is the only valuable asset of the estate. However, the lease is substantially in default. Assumption or rejection of that lease will have an important bearing on the financial status of the debtor and any return realized by creditors. Similarly, the landlord, Sealy, is inevitably and substantially affected by the debtor's assumption or rejection of this lease. It is the court's responsibility to examine the interests of all parties and to approve or disapprove assumption or rejection under 11 U.S.C.A. § 365(a) (West 1979). The responsibility of the court is magnified by the fact that interested creditors are not automatically required to be notified of motions to fix deadlines under § 365(d)(2) or of hearings on assumption or rejection. While Interim Rule 2002(b)(2) requires notice be provided to parties if property is to be sold,[4] no similar provision appears with regard to the assumption or rejection of executory contracts.[5] The Proposed Bankruptcy Rules remedy this situation by requiring notice and a hearing prior to court approval of an action on an executory contract.[6]

2. There being no trustee in this case, the defendant, as debtor in possession has the powers vested in a trustee. 11 U.S.C.A. § 1107(a) (West 1979).

3. Although the court in *In re Avery Arnold Construction Co.* seems to indicate that assumption by action is possible, the court clearly indicates that it is uncomfortable with that result in noting that "although the trustee's informal handling of this transaction meets the minimum requirements of the Code, it should not serve as a model to anyone. *Id.* at 35.

4. Interim Rule 2002(b)(2) reads as follows:
[A] proposed sale of property, other than in the ordinary course of business, including the time and place of any such sale, unless the court for cause shown shortens the time or orders a sale without notice.

5. The local rules of this court provide a technique for counsels to employ which resolves this notice problem. Local Rule 18 permits parties who agree to the assumption or rejec-

tion of an executory contract to file an appropriate application together with a certificate that notice of the proposed assumption or rejection has been sent to all creditors and parties in interest providing for a period in which an objection can be filed. If no objection is filed, the parties can submit a proposed agreed order. However, this procedure was obviously not available in this case.

6. The Preliminary Draft of Proposed New Bankruptcy Rules prepared by Committee on Rules of Practice and Procedure of the Judicial Conference of the United States August, 1982 Rule 6006 provides:
(a) PROCEEDING TO ASSUME, REJECT, OR ASSIGN. A proceeding to assume, reject, or assign an executory contract, including an unexpired lease, other than as part of a plan is governed by Rule 9014.
(b) PROCEEDING TO REQUIRE TRUSTEE TO ACT. A proceeding by a party to an executory contract or unexpired lease in a chapter 9 municipality case, chapter 11 reor-

446

This case provides a classic example of why assumption by action should be disapproved and the Code requirement of court approval strictly enforced. By agreed order and misunderstanding, the parties herein have managed to create great confusion requiring multiple court hearings, delay and uncertainty. All of this could have been avoided upon a single, properly noticed hearing on the application of some party to assume or reject this lease.

Even though § 365(d)(2) permits an interested party to petition the court to set a time within which the debtor-in-possession must assume or reject the lease,[7] § 365(d)(2) is not an avenue to avoid the court approval required by § 365(a). Simply because the court has placed a time limit on the debtor does not remove the Code requirement that the court review the debtor's decision and order the assumption or rejection. Section 365(d)(2) provides a vehicle to hasten the decision-making process by allowing the debtor to abandon unfavorable contracts prior to confirmation and by allowing landlords to regain property that will not ultimately become part of the reorganization. At the hearing on a request to fix a deadline pursuant to § 365(d)(2), the court does not apply the economic analysis required when considering the merits of an application to assume or reject an executory contract or lease. See Robertson v. Pierce (In re Chi-Feng Huang), 23 B.R. 798 (Bkrtcy. 9th Cir.1982); In re Fashion Two Twenty, Inc., 16 B.R. 784 (Bkrtcy.N.D.Ohio 1982). Therefore, it cannot be said that the hearing on the application to set a date certain can substitute for the court approval of assumption or rejection required by § 365(a).

■ Despite the expectations of the drafters of the Code, a procedure implementing § 365 has not yet been outlined by the bankruptcy rules.[8] The proper procedure suggested by this court is that the debtor's election to assume or reject an executory contract should be in unconditional and unambiguous form filed with the court and served upon the affected party and other parties in interest. If the lease is in default, the election to assume should also include a provision that the default will be cured or a provision for adequate assurance of its cure and should also include adequate assurance of future performance to satisfy § 365(b)(1). The election should incorporate a request for the court's approval and should be heard by the court at the earliest opportunity. If the debtor fails to act within a deadline set by § 365(d)(2), it becomes the responsibility of the landlord to move the court to order the lease rejected (assuming the landlord so desires).

■ Because the lease in this case remains property of the estate until the court approves a rejection, the lease continues under the protection of the bankruptcy court at this time. Sealy's efforts to pursue the eviction of the debtor in the Louisiana state courts are without effect on the debtor's rights in the lease.

The court cannot accept the proposition that the agreed order of August 13 complies

ganization case, or chapter 13 individual's debt adjustment case, to require the trustee, debtor in possession, or debtor to determine whether to assume or reject the contract or lease is governed by Rule 9014.

(c) HEARING. When a motion is made pursuant to subdivision (a) or (b) of this rule, the court shall set a hearing on notice to the other party to the contract and to other parties in interest as the court may direct.

7. 11 U.S.C.A. § 365(d)(2) reads as follows:

In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party

to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

8. Among the matters set forth in Appendix 1 of the House Judiciary Committee Report to be dealt with by Rules of Bankruptcy Procedure or local rules of court is:

(59) Procedure for court approval of trustee's assumption or rejection of executory contracts or unexpired leases including the method of initiating such approval and any notice required.

H.R.Rep. 595, 95th Cong., 1st Sess. 295 (1977) U.S.Code Cong. & Ad.News 5787, 6252 (1978).

with the requirements of § 365(a). As indicated above, no hearing on the merits of assumption or rejection of this lease has ever taken place in this court. No notice has ever been sent to creditors indicating that assumption or rejection was to be determined by the court. The agreed order no where contains court approval for assumption or rejection of the lease. This litigation is proof that there is a genuine issue among the parties as to what constitutes assumption or rejection under the terms of the parties' own agreed order. The court approval requirement of § 365(a) prohibits assumption or rejection of a lease by surprise, confusion or the inartful drafting of an agreed order setting a deadline under § 365(d)(2).[9]

Finally, although the court will not penalize a debtor's estate by automatically rejecting a lease at the expiration of a deadline, the court does not have discretion to enlarge a deadline for assumption or rejection where the request for extension comes after expiration of the initial § 365(d)(2) deadline. After a reasonable time period has been set under § 365(d)(2), the landlord is entitled to a prompt determination of the status of the lease. Applications to extend time are considered pursuant to Rule 906 of the Federal Rules of Bankruptcy Procedure.[10] Rule 607 provides guidelines for determining the timeliness of the assumption or rejection of executory contracts.[11] Rule 906(b)(2), however, specif-

**9.** In *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 104 n. 1 (2d Cir.1982), the court noted that "[t]herefore a Chapter 11 debtor, whose deadline under § 365(d)(2) is set by the court, should be presumed to have rejected the lease upon failure to meet the deadline." The Second Circuit reaches this conclusion by drawing a parallel between the 60-day deadline in a Chapter 7 case under § 365(d)(1) and the establishment of a deadline under § 365(d)(2). Acknowledging the deference due the Second Circuit's analysis, Congress did not enact § 365(d)(2) the way the Second Circuit reads that section. Section 365(d)(1) provides specifically for a "deemed rejection" in Chapter 7 cases if the trustee fails to assume or reject within 60 days; but, in Chapter 11 cases, § 365(d)(2) does not provide for a "deemed rejection" if the debtor fails to meet a court-established deadline under that subsection. The presumption of automatic rejection adopted by the Second Circuit unnecessarily conflicts with the court approval requirement of § 365(a). A harmonious reading of the two subsections would merely require court review of a contracting party's application for rejection after the expiration of a deadline set under § 365(d)(2). The Second Circuit's interpretation has the benefit of giving landlords and other contracting parties certainty that their contractual relationships are rejected if the debtor fails to act within a § 365(d)(2) deadline. Unfortunately, the Second Circuit's position does not satisfy the court approval requirement of § 365(a) and does not protect the other parties in interest—the creditors who may be losing assets from the estate through a "deemed rejection" of which they have no knowledge. The Second Circuit analysis ignores the problem of notice and leaves open the possibility that a "deemed rejection" is the product of collusion, malfeasance by the debtor-in-possession, negligence, mistake or some

other factor which would improperly penalize the creditors for the debtor's failure to act within a § 365(d)(2) deadline and then escape court review. This concern is particularly relevant in the instant case. Soon after management failed to assume or reject the lease herein, several other companies managed by the same individuals and involved in the sale and operation of Kelly Lyn Figure Salons were converted from Chapter 11 cases to cases under Chapter 7. This conversion was necessitated in part because of these individuals' mismanagement of the Chapter 11 estates.

**10.** Rule 906(b) reads as follows:

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without application or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order.

**11.** Rule 607 reads as follows:

Within 30 days after the qualification of the trustee, unless the court for cause shown extends or reduces the time, the trustee shall file a statement showing any executory contracts of the bankrupt, including unexpired leases, which the trustee has assumed. Whenever practicable, the trustee shall obtain approval of the court before he assumes a contract. Any such contract not assumed within 60 days after qualification of the trustee, or within such further or reduced time as the court may allow within such 60-day period, shall be deemed to be rejected. If a trustee does not qualify, any such contract shall be deemed to be rejected at the expiration of 60 days after the date of an order

ically excludes Rule 607 from enlargement once the original deadline has expired, except to the extent and under the conditions stated within Rule 607.[12] Rule 607 was adopted from and implements the time constraints applicable under the old Bankruptcy Act. Section 365 of the Bankruptcy Code has superseded the deadlines imposed under the Act and Rules and allows assumption or rejection of executory contracts in Chapter 11 cases until confirmation of a plan or within such other time as the court may specify. The original Bankruptcy Rules are still applicable to the extent they are not "inconsistent" with the Bankruptcy Code.[13] The issue is to what extent is Rule 607 inconsistent with the Code. The court finds that although the specific time limits imposed by the Rules no longer govern assumption or rejection, the policy underlying the exclusion of Rule 607 from enlargement and therefore the policy underlying deadlines established to assume or reject is still viable and not inconsistent with provisions of the Code. The Advisory Committee's Note to Rule 906(b) provides that:

> In the interest of expediting proceedings in bankruptcy, the last clause of subdivision (b) adds a number of acts for which more time cannot be granted under the first part of the subdivision. Thus, the time periods allowed by Rule 107(b)(2) for the payment of filing fees cannot be extended because of the disproportionate costs and delay to bankruptcy administration that result from such extensions. Similar considerations underlie the limitations on the extension of time for ... assuming an executory contract ....

This policy is no less significant under the Code. Although § 365 is arguably more flexible in allowing assumption or rejection, the need to restrict that period by court order is also provided. In setting such a deadline, the court considers the relative rights of the parties and the potential prejudice that would result if such a deadline were not established. This court is, therefore, without discretion to enlarge the time period to assume or reject a lease once such a deadline has been established by court order and the deadline has expired.

■ Even if Rule 906 would authorize this court to entertain debtor's motion, the debtor has not sufficiently explained its failure to assume or reject in a timely manner. Rule 906 permits the court to extend an expired deadline only if the requesting party's noncompliance was the product of "excusable neglect." The court must make a formal finding of "excusable neglect" and have an evidentiary basis for doing so before granting an extension. *First & Peoples National Bank v. Young,* 1 B.R. 387, 389 (Bkrtcy.M.D.Tenn.1979). While "excusable neglect" is not defined by the Bankruptcy Rules, the concept has been appropriately defined as "the failure to timely to perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *Beneficial Finance Co. v. Manning,* 4 Bankr. Ct.Dec. (CRR) 304, 305 (Bankr.D.Conn. 1978). *Accord Hanover Trust Co. v. Horvath,* 6 Collier Bankr.Cas.2d (MB) 1302, 1306, 20 B.R. 962 (Bkrtcy.S.D.N.Y.1982); *In*

directing that a trustee be not appointed, or at such earlier or later time as the court may fix within such 60-day period. On application by the trustee for authority to assign any contract he has assumed pursuant to this rule, the court shall determine the matter after hearing on notice to the other party to the contract.

**12.** Rule 906(b)(2) provides that:
[U]pon application made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rule 107(b)(2), 115(b)(4) insofar as it makes Rule

50(b) of the Federal Rules of Civil Procedure applicable in bankruptcy cases, 302(e), 403(c), 607, 752(b), 802, 923, and 924, except to the extent and under the conditions stated in them.

**13.** Section 405(d) of Title IV of the Bankruptcy Code (codified at 28 U.S.C.A. prec § 1471 (Law Co-op Supp.1982)) provides in pertinent part:
(d) The rules prescribed under section 2075 of title 28 of the United States Code ... and in effect on September 30, 1979, shall apply to cases under title 11 ... to the extent not inconsistent with [the Bankruptcy Code] ....

re Grethen, 14 B.R. 221, 223 (Bkrtcy.N.D. Iowa 1981); In re Webb, 8 B.R. 535, 537 (Bkrtcy.S.D.Tex.1981); Reed Lumber Co. v. Rogers, 2 B.R. 485, 487 (Bkrtcy.W.D.Va. 1979). In implementing this definition, courts have generally required three basic elements: (1) good faith by the party seeking the extension of time; (2) a reasonable basis for noncompliance; and (3) a lack of prejudice to the opposing party. Citizens National Bank v. Parrish, 13 B.R. 539, 541 (Bkrtcy.W.D.Ky.1981); Menna v. Murphy, 1 B.R. 736 (Bkrtcy.S.D.Cal.1979). The applicant seeking the extension bears the burden to demonstrate each of these elements. Fuerst v. Anderson, 5 B.R. 47, 50 (Bkrtcy.N. D.Ohio 1980).

The debtor has failed to carry its burden of demonstrating "excusable neglect." Although the court will assume the debtor is proceeding in good faith in requesting an extension, the testimony adduced at the hearing merely reveals confusion on the part of the debtor as to the status of the lease between the end of the negotiations in September and the final date set for assumption or rejection in October. Mere confusion does not satisfy the excusable neglect standard. The debtor offered no justification for its failure to comply with the court's order. The debtor did not contend that the established period was an unreasonable one within which to make a decision. The debtor offered no reason for failing to take some action manifesting to this court a desire to assume or reject, or for not seeking additional time within which to conduct negotiations. Debtor's attorney is an experienced bankruptcy practitioner who is well aware of the importance of deadlines in bankruptcy cases. The court may not excuse the failure to comply with its orders by sanctioning without cause the expansion of deadlines after their expiration.

For the foregoing reasons, debtor's motion for an expansion of time to assume or reject the lease is DENIED. The lease herein remains property of the estate. Because no notice has issued or hearing been held regarding the merits of assumption or rejection of this lease, an expedited hearing on rejection of the lease is set for January 20, 1983 at 1:30 p.m. in Room 226, Customs House, 701 Broadway, Nashville, Tennessee.