**In re NATIONAL OIL COMPANY, Debtor.**

**Bankruptcy No. 85 B 07869 C.**

United States Bankruptcy Court, D. Colorado.

Sept. 14, 1987.

Steven Searls, Michael Lindsay, Denver, Colo., for MCA.

John F. Simpson, Jr., Denver, Colo., for debtor.

MEMORANDUM OPINION AND ORDER ON MOTION FOR PAYMENT OF ADMINISTRATIVE RENT CLAIM PURSUANT TO 11 U.S.C. § 365(d)(3)

PATRICIA ANN CLARK, Bankruptcy Judge.

This matter comes before this Court on the motion of Market Center Associates ("MCA") seeking the payment of $17,-858.34 as an administrative rent claim pursuant to 11 U.S.C. § 365(d)(3). MCA contends that two commercial leases with the debtor were rejected by operation of law because the debtor failed to obtain court approval of the rejection of the leases prior to the expiration of the 60–day time limit imposed by Section 365(d)(4) of the Bankruptcy Code. The debtor asserts that the leases were rejected on the day the petition in bankruptcy was filed as a result of certain pre-petition communications and conduct, which were reaffirmed postpetition by similar conduct, manifesting an unwillingness to pay the rent required in the leases. In the alternative, the debtor contends that rejection of the leases occurred when the debtor sent a letter to MCA's agent on February 11, 1986, which unequivocally delineated rejection. The debtor argues that if the rejection is deemed to occur on February 11, 1986, such rejection should relate back to the date of the petition pursuant to Section 365(g). Finally, the debtor asserts that any administrative postpetition rent due MCA should be based upon the fair market value of the leased premises and not the rent reserved in the lease agreements.

The essential facts, as stipulated by the parties, are as follows. On March 20, 1980, the debtor leased from MCA 7100 square feet of commercial office space at 1350 Seventeenth Street in Denver, Colorado, for a term of ten years. On March 15, 1983, the debtor leased an addition 5500 square feet of space from MCA at the same location for a period of seven years. The leases were never amended or altered by the parties. The debtor filed bankruptcy on December 18, 1985. Subsequent to the filing of the bankruptcy, the parties engaged in a series of negotiations regarding a new lease of the premises. On February 11, 1986, the debtor sent a letter to MCA's agent stating in part, "This letter will serve as National's rejection of all of the old lease on the properties previously leased by National Oil Company...." The debtor never filed a motion with this Court

for approval of the rejection of any leases with MCA. On February 20, 1986, the debtor issued MCA a check for $10,642.11 as payment for some postpetition rent, and MCA cashed the check. The debtor remained in possession of the leased premises from the date of the petition through at least March of 1986.

Section 365 of the Bankruptcy Code governs the duties and obligations of a trustee or a debtor-in-possession with regard to executory contracts and unexpired leases. Section 365(a) provides:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Section 365(d)(4) states:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

The plain, unequivocal language of Section 365(a) indicates that court approval is required before a lease can be rejected. The vast majority of the cases surveyed uphold this view of a literal reading of this section. *In re Tucci,* 47 B.R. 328 (Bankr.E. D.Va.1985); *In re The Bastian Company, Inc.,* 45 B.R. 717 (Bankr.W.D.N.Y.1985); *cf. In re Treat Fitness Center, Inc.,* 60 B.R. 878 (9th Cir. BAP 1986).

The court in *In re Treat Fitness Center, Inc.,* discussed the logic of court approval as a pre-condition to any assumption or rejection of an unexpired lease:

> 11 U.S.C. § 365 specifically states that the trustee [or debtor-in-possession], subject to court approval, may assume or reject an executory contract. Bankruptcy Rule 6006 states that a proceeding to assume or reject an executory contract

or unexpired lease is governed by Bankruptcy Rule 9014 which in turn states that relief shall be requested by motion and reasonable notice and opportunity for a hearing shall be afforded to the opposing party. To not follow these rather explicit rules would be to lead us back into the morass of attempting to judge the meaning and import of the conduct and conversations of the parties.

*Id.* at 879.

The debtor contends that compliance with these formalities requiring court approval to reject leases is an unreasonable burden. This Court rejects the contention that compliance with the explicit language of the law is unnecessary. Section 365 and the accompanying Bankruptcy Rules are designed to provide a degree of factual certainty in determining the actual date of rejection. Moreover the requirements of notice and opportunity for a hearing under Bankruptcy Rule 9014 provide the creditors and the court with an opportunity to examine the efficacy of a debtor's decision to reject a lease under the guidelines of the business judgment test. It may be, on certain occasions, that a debtor's decision to reject an unexpired lease would not be in the best interests of the estate or the creditors, and the requirement of court approval operates as a safeguard to protect against a unilateral decision by the debtor that could be prejudicial to the creditors. *See Johnson v. Fairco Corp.,* 61 B.R. 317 (Bankr.N.D.Ill.1986); *cf. In re Grayhall Resources, Inc.,* 63 B.R. 382 (Bankr.Colo. 1986).

For these reasons, the court finds that because the debtor did not apply to this Court for approval to reject the leases with MCA, the leases expired on February 16, 1986, 60 days after the petition was filed, by operation of Section 365(d)(4).

Having reached this conclusion, the court must now determine the amount of administrative rent to be paid to MCA for the debtor's continued occupation and use of the premises.

11 U.S.C. § 365(d)(3) provides in part:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1).... Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

Section 365(d)(3) requires the continued performance by the debtor-in-possession of the full rent obligations under a lease until the lease is either assumed or rejected. *In re Chandel Enterprises, Inc.*, 64 B.R. 607 (Bankr.C.D.Cal.1986); *In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415 (D.Mass.1987); *In re M.H.I. Inc.*, 61 B.R. 69 (Bankr.Md.1986).

The legislative history also indicates that a lessor is to receive the rent provided in the lease during the period from the filing of bankruptcy until the lease is either assumed or rejected. In the conference report that appears in 130 Cong.Rec. 58894–95 (daily ed. June 29, 1984), it was stated:

A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. Lease payments include rent due the landlord and common charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area and other charges on time pending the trustee's assumption or rejection of the lease. For cause the court can extend the time for performance of obligations due during the first 60 days after the order for relief, but not beyond the end of such 60–day period. At the end of this period, the amounts due during the first 60 days would be required to be paid, and thereafter, all obligations must be performed on time. This permissible 60–day grace period is intended to give the trustee time to determine what lease obligations the debtor has and to locate the cash to make the required payments in exceptionally large or complicated cases.

■ Accordingly, this Court adopts the view that a lessor is entitled to the rent reserved in the lease as a postpetition administrative expense until the lease has been rejected under Section 365(d)(4) or with court approval.

■ The debtor contends that any rejection of the lease would relate back to the date of the petition pursuant to Section 365(g) rendering both MCA's pre-petition and postpetition administrative rent claims subject to Section 502(g). The debtor has not listed any relevant authority to support this argument. Section 365(g) provides in part that rejection of an unexpired lease of the debtor in a Chapter 11 case constitutes a breach of such lease immediately before the date of the filing of the petition. Section 502(g) provides for the allowance of such claim subject to the constraints of 502(b)(6).

This Court holds that neither Section 365(g) nor Section 502(g) are applicable to a lessor's claim for postpetition administrative rent under Section 365(d)(3). The postpetition administrative rent claim of MCA is a claim for administrative expense under Section 503(b)(1)(A) and is completely separate and distinct from the damages MCA may claim for rejection of the lease under Section 502(g). *See In re Tucci*, 47 B.R. 328 (Bankr.E.D.Va.1985); *In re Davidson*, 70 B.R. 38 (Bankr.Conn.1987).

The parties have stipulated that the leases provide for rent during the post-petition period up through February 11, 1986 [1] in the amount of $28,500.45. MCA accepted a payment of $10,642.11 in February. Under the language of § 365(d)(3), acceptance of this check does not in any way operate as a waiver or relinquishment of MCA's rights to payment under the terms of the lease. This payment, credited against the amount due, leaves a balance of $17,858.34 that must be paid immediately by the debtor to MCA. However, with the exception of the rent payment for April,[2] this Court makes no determination as to the amount due MCA for the debtor's continued occupation of the premises past February 11, 1986 absent notice and a hearing under Section 503(b)(1)(A). Nor does this Court render any determination as to the possible claims of MCA for damages that may be due under Section 502.

IT IS, THEREFORE, ORDERED that MCA's motion for payment of administrative rent claims pursuant to 11 U.S.C. § 365(d)(3) is granted to the extent of $17,858.34 payable forthwith.

---

1. Although this court has found that the leases were rejected by operation of Section 365(d)(4) on February 16, 1986 and that MCA would be entitled to post-petition rent under the terms of the leases through February 16th, MCA has only asked for postpetition administrative rent under Section 365(d)(3) through February 11, 1986.

2. MCA's motion also requested $5,344.16 for administrative rent due for April of 1986. Since the debtor has subsequently paid this amount, the administrative rent claim for that month pursuant to MCA's motion has been rendered moot.