**In re REVCO D.S., INC., et al., Debtors.**

**Bankruptcy Nos. 588–1308 through 588–1321, 588–1305, 588–1761 through 588–1812, and 588–1820.**

United States Bankruptcy Court, N.D. Ohio.

Dec. 4, 1989.

See also, D.C., 99 B.R. 768.

John Silas Hopkins, III, Thomas R. Lucchesi, Baker & Hostetler, Cleveland, Ohio, for debtors.

Stuart E. Hertzberg, Pepper, Hamilton & Scheetz, Detroit, Mich., for Unsecured Trade Creditors' Committee.

Conrad Morgenstern, U.S. Trustee, Cleveland, Ohio.

Brad Eric Scheler, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Unsecured Noteholders' Committee.

Robert J. White, O'Melveny & Myers, Los Angeles, Cal., for Unofficial Committee of Secured Bank Lenders.

Richard Lieb or William J. Rochelle, Kronish Lieb, Weiner & Hellman, New York City, for Unofficial Preferred Equity Committee.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Niedenthal, Columbus, Ohio, for Odd Lot Trading, Inc. Creditors Committee.

Securities & Exchange Com'n, c/o John R. Lee, Chicago, Ill.

Timothy A. Barry, Brouse & McDowell, Akron, Ohio, for Nationwide Ins. Companies.

Jeff J. Friedman, Rosenman & Colin, New York City, John J. Guy, Guy Lammert & Towne, Akron, Ohio, for Kandist Associates Ltd. Partnership.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION OF KANDIST ASSOCIATES LIMITED PARTNERSHIP

HAROLD F. WHITE, Bankruptcy Judge.

The "Motion of Kandist Associates Limited Partnership for Order Authorizing and Ordering Debtor to Pay Administrative Expenses" (Docket No. 771) came before the Court for hearing. Due notice of said hearing was provided in accordance with the Administrative Orders of this Court. Appearing at the hearing were Jeff J. Friedman and John J. Guy on behalf of Kandist Associates Limited Partnership ("Kandist"), Timothy Barry on behalf of Nationwide Insurance and Thomas R. Lucchesi on behalf of the Debtors.

In the subject motion Kandist seeks payment of expenses incurred under a sublease between Kandist and Debtors. It is the conclusion of this Court that the motion is well founded and payment to Kandist shall be ordered. Based upon the presentations of counsel, testimony and evidence introduced at the hearing and the pleadings submitted, the Court makes the following Findings of Fact.

## FINDINGS OF FACT

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and General Order of Reference 84 of the Northern District of Ohio. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. On July 26 and 28, 1988 and October 4 and 5, 1988 Revco D.S., Inc. and substantially all of its operating subsidiaries, (hereinafter "Revco"), filed separate chapter 11 petitions pursuant to Section 301 of the Bankruptcy Code. Revco thereupon continued in the management and operation of its businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

3. Revco is engaged in the operation of approximately 1,900 retail drug stores throughout the United States.

4. On September 22, 1988 after notice and a hearing on the matter, this Court entered an Order pursuant to 11 U.S.C. § 365(d)(4) extending the time within which Revco must elect to assume or reject nonresidential real property leases until the time of plan confirmation. (Docket No. 231)

5. Revco was the sublessee of a certain warehouse facility located at 1100 Blake Street, Edwardsville, Kansas (the "Premis

es") under a sublease granted by Kandist on December 15, 1981 (the "Sublease"). *Transcript of May 23, 1989 hearing ("Tr."),* p. 115.

6. On November 23, 1988 Revco filed a motion with this Court seeking, *inter alia,* approval of Revco's rejection of the Sublease. (Docket No. 571) On December 13, 1988, at the hearing on the motion, the Court authorized the rejection of the Sublease. *Transcript of December 13, 1988 hearing,* pp. 132–133. At the hearing this Court reserved its decision as to when the rejection of the Sublease was effective.

7. At the May 23, 1989 hearing on the subject motion Kandist presented the testimony of Sidney Ingber, first vice-president of Integrated Resources and Zar Corporation. Zar Corporation is a partner of Chadgold Associates which is the general partner of Kandist. Mr. Ingber is responsible for monitoring the business of Kandist with respect to the Revco bankruptcy. *Tr.,* pp. 113–114.

8. By letter dated October 24, 1988 Revco informed Kandist that it rejected the Sublease effective as of October 24, 1988. (the "Rejection Letter") *Tr.,* p. 141 and Kandist Ex. 2. Said Rejection Letter was stamped as received by Kandist on October 31, 1988. *Tr.,* p. 117. The Rejection Letter stated in pertinent part:

> This letter is to inform you that the undersigned sublessee ... does hereby, as of the date of this letter, reject the sublease pursuant to the provisions of section 365 of the Bankruptcy Court. [sic] A motion for the approval by the Bankruptcy Court of this rejection is being filed and will be heard by the Court. We have made arrangements to have the keys to the property delivered to you and to terminate the utilities servicing the property. The responsibility for the property is now yours and the undersigned assumes no further responsibility as to this property. You should take any necessary action to protect your interests in the property.

9. Revco paid postpetition rent to Kandist from July 28, 1988, the petition date, through October 24, 1988, the date of the Rejection Letter. *Tr.,* p. 117.

10. Total rent of $106,337.16 is unpaid for the period October 25, 1988 through December 13, 1988, the date the Court ordered approval of the rejection of the Sublease. *Tr.,* p. 117.

11. The total charges sought by Kandist in connection with the subject motion are $120,804.62. *Tr.,* p. 131. (Unpaid postpetition rent of $106,337.16 and $14,467.46 expenses as itemized in Finding No. 13.)

12. Upon receiving the Rejection Letter, Mr. Ingberg made efforts to "winterize" and insure the premises. *Tr.,* p. 118.

13. The following expenses were incurred and paid, or will be paid, by Kandist for the postpetition period through December 13, 1988 relating to the Premises:

a) $1,460.60 for insurance; *Tr.,* p. 119 and Kandist Ex. 3;

b) $527.78 for an umbrella liability policy; *Tr.,* p. 120 and Kandist Ex. 4;

c) $4,400.83 for property damage insurance; *Tr.,* pp. 121–122 and Kandist Ex. 5;

d) $3,960.00 to drain down the fire protection sprinkler systems; *Tr.,* pp. 123–124 and Kandist Ex. 6;

e) $691.62 to shut off water; *Tr.,* pp. 124–125 and Kandist Ex. 7;

f) $250.00 for maintenance and supervision while utilities were turned on and to secure new lock cylinders and keys; *Tr.,* pp. 125–126 and Kandist Ex. 8;

g) $325.00 for lawn and parking lot maintenance; *Tr.,* pp. 126–127 and Kandist Ex. 9;

h) $600.84 for gas service; *Tr.,* pp. 127–128 and Kandist Ex. 10;

i) $146.77 for security service for the building; *Tr.,* pp. 128–129 and Kandist Ex. 11;

j) $1,235.02 for legal services of Rosenman & Colin; *Tr.,* pp. 129–130 and Kandist Ex. 12;

k) $869.00 for legal services of John J. Guy; *Tr.,* p. 130 and Kandist Ex. 13.

The total amount of these expenses is $14,467.46.

14. After receipt of the Rejection Letter Kandist did not notify Revco that it was relieved of any monetary responsibilities under the Sublease. *Tr.,* pp. 131–132.

15. Mr. Ingber was aware that the Premises were vacant prior to receiving the Rejection Letter. *Tr.,* p. 140.

16. Revco returned the keys to the Premises to Kandist shortly after the Rejection Letter was sent. *Tr.,* p. 143.

17. Mr. Ingber obtained insurance on the Premises without knowing if the Premises were already adequately insured under the Sublease. *Tr.,* pp. 152–153.

18. Kandist presented the testimony of Howard Bieber, vice-president of distribution at Revco. Mr. Bieber testified that in March, 1988 Revco decided to close the Premises and Revco did not tell Kandist it had closed and vacated the Premises until October 24, 1988. *Tr.,* pp. 163–165.

## ISSUE 1
### WHEN IS THE EFFECTIVE DATE OF THE REJECTION OF THE SUBLEASE?

### CONCLUSIONS OF LAW

■ Revco asserts that the Sublease was rejected on October 24, 1988 by dispatching to Kandist a letter declaring its intention to surrender the Premises and seek court approval of the rejection. Kandist asserts that rejection of the Sublease did not occur until December 13, 1988, when the Bankruptcy Court, after notice and a hearing, approved the rejection. Nationwide Insurance Company filed a memorandum in support of Kandist's position.

Kandist cites an exhaustive list of cases in support of its position that court approval is necessary for an effective rejection of a lease. Revco primarily relies on the case *In re 1 Potato 2, Inc.,* 58 B.R. 752 (Bankr. D.Minn.1986) for its position that court approval is not a prerequisite to an effective rejection.

Upon review of the relevant case law on this issue as well as the presentations of counsel at the hearing and the pleadings submitted, it is the conclusion of this Court that approval of the Bankruptcy Court is necessary for an effective rejection of a lease and therefore, December 13, 1988, the date the Court approved the rejection of the Sublease, is the effective date of the rejection of the Sublease in the instant case.

Section 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a), governs rejection of unexpired leases and states in pertinent part:

> [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.[1]

Unilateral acts or decisions of a debtor do not constitute a rejection of a lease. The requirement of express court approval in order to reject an executory contract or unexpired lease under section 365(a) is well supported by case law. *In re Hejco, Inc.,* 87 B.R. 80, 82 (Bankr.D.Neb.1988); *Guardian Equipment Corp. v. Whiteside (In re Guardian Equipment Corp.),* 18 B.R. 864, 867 (Bankr.S.D.Fla.1982); *In re National Oil Co.,* 80 B.R. 525, 526 (Bankr.D.Colo. 1987) ("The plain, unequivocal language of Section 365(a) indicates that court approval is required before a lease can be rejected"); *Sealy Uptown v. Kelly Lyn Franchise Co. (In re Kelly Lyn Franchise Co.),* 26 B.R. 441, 444 and 446 (Bankr.M.D.Tenn.1983), ("the explicit requirement of court approval is now clear under the language of § 365(a) of the Code", "the lease in this case remains property of the estate until the court approves a rejection"); *Frank C. Videon, Inc. v. Marple Publishing Co. (In re Marple Publishing Co.),* 20 B.R. 933, 935 (Bankr.E.D.Pa.1982) ("any assumption or rejection of an unexpired lease is devoid of validity without the court's approval"). *See, also, 2 Collier on Bankruptcy,* para. 365.03(2) at 365–30 (15th ed. 1989) ("In a chapter 11 case rejection can only come about upon order of the court under section 365(a) or by virtue of the provisions of a

---

1. The reference to "trustee" specifically applies to debtors in possession by virtue of 11 U.S.C. § 1107(a).

confirmed plan. As long as rejection is not ordered the contract continues in existence").

The case *In re National Oil Co.*, 80 B.R. 525 (Bankr.D.Colo.1987), submitted by Kandist, is particularly persuasive in the instant matter. In *National Oil* the debtor asserted that two commercial leases were rejected when the debtor sent a letter to the lessor which unequivocally delineated rejection. The debtor never filed a motion seeking approval of the rejection of the leases. The court found that because the debtor did not apply to the court for approval to reject the leases they expired 60 days after the petition was filed, by operation of section 365(d)(4). *Id.* at 526. The court in *Treat Fitness Center, Inc., v. Rainbow Investment (In re Treat Fitness Center, Inc.)*, 60 B.R. 878 (Bankr. 9th Cir. 1986), at p. 879, discussed the logic of court approval as a pre-condition to any assumption or rejection of an unexpired lease:

> 11 U.S.C. § 365 specifically states that the trustee, subject to court approval, may assume or reject an executory contract. Bankruptcy Rule 6006 states that a proceeding to assume or reject an executory contract or unexpired lease is governed by Bankruptcy Rule 9014 which in turn states that relief shall be requested by motion and reasonable notice and opportunity for a hearing shall be afforded to the opposing party. To not follow these rather explicit rules would be to lead us back into the morass of attempting to judge the meaning and import of the conduct and conversations of the parties.

An application of the facts of the instant matter to the unequivocal language of section 365(a), as well as the wealth of case law interpreting said section, establishes to this Court that the rejection of the Sublease occurred on December 13, 1988, upon this Court's order approving the rejection.

Although the Rejection Letter sent to Kandist may be described as a clear communication of Revco's intention to reject the Sublease, this Court will not adopt the position of reviewing Revco's conduct to attempt to judge the meaning of such conduct whenever the issue of an informal rejection or assumption of a lease is raised. Indeed, section 365(a) was drafted to remedy this problem. *In re A.H. Robins Co., Inc.*, 68 B.R. 705, 708, 710 (Bankr.E.D.Va. 1986). The court in *Treat Fitness Center* stated on p. 879:

> We read 11 U.S.C. § 365 together with Bankruptcy Rule 6006 to require that the debtor or trustee file a formal motion to assume, thus overruling cases under the former Bankruptcy Act that required courts to judge whether words or deeds, often ambiguous at best, constituted an assumption or rejection of a lease or executory contract.

*See, also, Kelly Lyn, supra,* at p. 444, wherein the debtor, relying on case law under the old Bankruptcy Act, contended that assumption of an unexpired lease can be accomplished by implication. The court rejected debtor's contention and stated "even under the Act, the majority rule and the better rule was that judicial approval was required before allowing the assumption or rejection of an unexpired lease"; *In re D'Lites of America, Inc.*, 86 B.R. 299, 302 (Bankr.N.D.Ga.1988) (follows majority rule that lease cannot be assumed by conduct); *In re OK Kwi Lynn Candles, Inc.*, 75 B.R. 97, 100 (Bankr.N.D.Ohio 1987) (rejecting debtor's assertion that assumption of lease may occur "through ways other than formal notice").

## POLICY CONSIDERATIONS

While the clear language of section 365(a) and supporting case law establish that an unexpired lease is not rejected until Bankruptcy Court approval this Court further notes important policy considerations that support this view as well.

The differences between former Bankruptcy Rule 607 [2] and current Bankruptcy Rules 6006(a) [3] and 9014 [4] evidence Con-

---

**2.** Former Bankruptcy Rule 607 provided, in pertinent part, that *"Whenever practicable,* the trustee shall obtain approval of the court before he assumes a contract." (emphasis added.)

**3.** Bankruptcy Rule 6006(a) provides:

**4.** See note 4 on page 269.

gressional intent to strengthen the role of the court in the assumption/rejection decision making process. *Swiss Hot Dog Co. v. Vail Village Inn, Inc., (In re Swiss Hot Dog Co.)*, 72 B.R. 569, 573 (D.Colo.1987).

This Court agrees with the policy considerations noted in *Swiss Hot Dog*, at 573, "Court approval" is now "an indispensible step in the process." *A.H. Robins*, at 710.

Revco contends that if court approval is necessary to effectuate a rejection both debtors and lessors would be subject to the uncertainty of court dockets and resolution of the rejection issue could be delayed for significant periods, to the detriment of debtors, lessors and creditors. [*Debtors' Brief in Opposition*, p. 11 (Docket No. 912)] Revco further contends that difficulties with court approval will be especially burdensome in this case wherein Revco has approximately 1,900 leases, any of which may be rejected prior to plan confirmation.[5] This Court rejects Revco's contentions and concurs with the court in *National Oil*, *supra*, at p. 526:

> Section 365 and the accompanying Bankruptcy Rules are designed to provide a degree of factual certainty in determining the actual date of rejection. Moreover the requirements of notice and opportunity for a hearing under Bankruptcy Rule 9014 provide the creditors and the court with an opportunity to examine the efficacy of a debtor's decision to reject a lease under the guidelines of the business judgment test. It may be, on certain occasions, that a debtor's decision to reject an unexpired lease would not be in the best interests of the estate or the creditors, and the requirement of court approval operates as a safeguard to protect against a unilateral decision by the debtor that could be prejudicial to the

creditors. *See Johnson v. Fairco Corp.*, 61 B.R. 317 (Bankr.N.D.Ill.1986); *cf. In re Grayhall Resources, Inc.*, 63 B.R. 382 (Bankr.Colo.1986).

An examination of Revco's position, when applied to facts different from the case at bar, reveals that additional costs and burdens may be incurred by the debtor's estate if the court does not approve a rejection of a lease. According to Revco's position a debtor can reject a lease simply by notifying lessor it rejects the lease and will seek court approval of the rejection at a later date. Under Revco's interpretation, upon notification of rejection to lessor the debtor's obligation to pay rent ceases.

The Court finds two serious problems with this interpretation. First, the lessor is placed in the unfortunate position of relying on debtor to file a motion for approval of the rejection with the court and await approval. During this period of time the lessor shall receive no rent under the lease. If lessor does not choose to rely on debtor's action the lessor may do the following: a) Relet the premises prior to court approval of the rejection and face the risk that the court may not approve the rejection; or b) Initiate its own action to seek approval of the rejection and recover the property. Secondly, if after notification of rejection is given, circumstances exist that indicate the lease should not have been rejected (a party is interested in purchasing the lease at a profit to the debtor's estate) the rejection would still be effective as of the date of notification. Under these circumstances the estate will suffer a loss as the lease was rejected prior to the date the offer to purchase was received. When questioned at the hearing regarding such a scenario Revco responded that the rejection should not be approved and a determination of

---

*Proceeding To Assume, Reject, or Assign.* A proceeding to assume, reject, or assign an executory contract, unexpired lease, or time share interest, other than as part of a plan, is governed by [Bankruptcy] Rule 9014.

**4.** Bankruptcy Rule 9014 provides in pertinent part:

*Contested Matters.* In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion,

and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.

**5.** Revco also asserts that this Court has entered two orders in this case which support Revco's position (Docket Nos. 275 and 834). Those Orders have no relevance to the present issue as the effective date of rejection was neither contested nor addressed by this Court.

damages would have to be made on a case by case basis. *Tr.*, pp. 184–185.

This Court rejects Revco's position as it is contra to section 365(a) and case law. Clearly, rejection of an unexpired lease is by necessity effective only upon court approval.

Revco relies on *In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bankr.D.Minn.1986) in support of its position. In that case the court denied a lessor's request for administrative rent incurred subsequent to receipt of a notice of rejection of the lease. The court in *1 Potato 2* stated on pp. 754–55:

> [T]he trustee or debtor in possession may assume or reject an executory contract or unexpired lease by clearly communicating in an unequivocal manner its intentions to either assume or reject to the lessor.

. . . . .

> Court approval, therefore, in effect is not a condition precedent to an effective assumption or rejection but rather, the statutory language in section 365(a) serves to indicate that the decision of the trustee or debtor-in-possession, and its business judgment, is subject to review and possible reversal by the court.

This Court respectfully declines to follow the conclusion of the court in *1 Potato 2*. This Court finds the holding and rationale of *1 Potato 2* flawed. The court in *1 Potato 2* relied heavily on *By–Rite Distributing, Inc. v. Brierley, (In re By–Rite Distributing, Inc.)*, 55 B.R. 740 (D.Utah 1985) in support of its decision. In *By–Rite* the court held that a trustee assumes a lease, for purposes of 11 U.S.C. § 365(d)(4), when he communicates his decision to assume by filing a motion within 60 days of the petition date. The *By–Rite* court did not address when an assumption or rejection becomes effective. The *By–Rite* decision addresses the procedures for filing a motion under § 365(d)(4)—this is not the issue at bar or in *1 Potato 2*. *In re Bon Ton Restaurant and Pastry Shop, Inc.*, 52 B.R. 850 (Bankr.N.D.Ill.1985), also cited by the *1 Potato 2* court, addressed the same issue as *By–Rite* and did not discuss

the effective date of an assumption or rejection.

Additionally, the holding in *1 Potato 2* has been rejected by other courts. *Swiss Hot Dog Co.*, 72 B.R. at 573 ("I decline to follow *1 Potato 2* to the extent it exceeds the scope of the *By–Rite* and *Bon Ton* discussions on assumption by conduct.") and labeled as the minority viewpoint on when a rejection is effective under section 365(a). *In re D'Lites of America, Inc.*, 86 B.R. 299, 302 (Bankr.N.D.Ga.1988).

Accordingly, this Court finds Revco's position unpersuasive and holds that a rejection of an unexpired lease becomes effective only upon court ordered express approval of said rejection. Therefore, it is the conclusion of this Court that the rejection of the Sublease in the instant matter became effective on December 13, 1988.

## ISSUE 2

ARE THE POSTPETITION RENTS AND MISCELLANEOUS EXPENSES WHICH ACCRUED UNDER THE SUBLEASE IMMEDIATELY PAYABLE AS EXPENSES OF ADMINISTRATION OF THE DEBTORS' ESTATE?

### CONCLUSIONS OF LAW

Kandist seeks payment of all rent accruing through the effective date of the rejection, December 13, 1988, as well as miscellaneous expenses incurred by Kandist upon notification that Debtors intended to reject the Sublease.

Section 365(d)(3) of the Bankruptcy Code, 11 U.S.C. § 365(d)(3), states in pertinent part:

> The trustee shall timely perform all the obligations of the debtor, ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

### POSTPETITION RENT

■ This provision expressly provides that the debtor timely compensate a lessor of nonresidential real property for full rental obligations due under the lease until it is

actually rejected. *In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415, 416 (D.Mass.1987).

In accordance with this Court's conclusion that the Sublease was rejected effective December 13, 1988, Revco is obligated to timely pay Kandist for all rent accruing through the effective date. Accordingly, Revco shall be ordered to pay Kandist $106,337.16 (Finding No. 10) for the rent accrued under the Sublease from October 24, 1988 through the date of rejection. Section 365(d)(3).

## MISCELLANEOUS EXPENSES AND ATTORNEYS' FEES

Kandist further requests reimbursement for miscellaneous expenses for maintenance, utilities, insurance and attorneys' fees incurred due to the rejection. Kandist argues that it is entitled to reimbursement pursuant to section 365(d)(3), as Revco was obligated under the Sublease for the miscellaneous expenses.

Revco asserts it should not reimburse Kandist for such expenses because they did not benefit Revco's estate and would have been incurred by Kandist regardless of the timing of the rejection. Revco further argues that no provision of the Bankruptcy Code or the Sublease permits Kandist to recover these expenditures.

Kandist asserts it is entitled to reimbursement because paragraphs 9, 12, 18(f) and 19(c) of the Sublease specifically provide for such reimbursement.

The relevant portions of the Sublease paragraphs noted by Kandist provide in pertinent part:

9. *Maintenance and Repair.*

(a) Lessee acknowledges that it has received the Premises in good order and repair. Lessee, at its own expense, will equip the Premises and will maintain all parts of the Premises in good repair, appearance and operating condition, except for ordinary wear and tear, and will take all action and will make all structural and nonstructural, foreseen and unforeseen and ordinary and extraordinary changes and repairs which may be required to keep all parts of the Premises in such good repair and operating condition, except for ordinary wear and tear, and in safe condition.

12. *Insurance.*

(a) Lessee will maintain insurance on the Premises of the following character:

(i) Insurance against loss by fire, lightning and other risks which at the time are included under "extended coverage" endorsement, in amounts sufficient to prevent Lessor or Lessee from becoming a co-insurer of any loss but in any event in amounts not less than 100% of the actual replacement value of the Improvements, exclusive of foundations and excavations.

(ii) General public liability insurance against claims for bodily injury, death or property damage occuring on, in or about the Premises and adjoining streets and sidewalks.

.　　.　　.　　.　　.

(v) Such other insurance, in such amounts and against such risks, as is commonly obtained in the case of property similar in use to the Premises and located in the locality in which the Premises are located, including war-risk insurance when and to the extent obtainable from the United States Government or any agency thereof.

18. *Conditional Limitations; Default Provisions.*

(f) In the event of any expiration or termination of the Term of this Sublease or re-entry or repossession of the Premises by reason of the occurrence of an Event of Default, Lessee will pay to Lessor all Basic Rent, additional rent and other sums required to be paid by Lessee to and including the date of such expiration, termination, re-entry or repossession; and, thereafter, Lessee shall, until the end of what would have been the Term of this Sublease in the absence of such expiration, termination, re-entry or repossession, and whether or not the Premises shall have been relet, be liable to Lessor for, and shall pay to Lessor, as liquidated and agreed current damages: (i) all Basic Rent, additional rent and other sums

which would be payable under this Sublease by Lessee in the absence of such expiration, termination, re-entry or repossession, less (ii) the net proceeds, if any, of any reletting effected for the account of Lessee pursuant to paragraph 18(d) hereof, after deducting from such proceeds all Lessor's expenses in connection with such reletting (including, but not limited to, all repossession costs, brokerage commissions, reasonable attorneys' fees and expenses, employees' expenses, alteration costs and expenses of preparation for such reletting). Lessee will pay such current damages on the days on which Basic Rent would be payable under this Sublease in the absence of such expiration, termination, re-entry or repossession, and Lessor shall be entitled to recover the same from Lessee on each such day.

19. *Additional Rights of Lessor.*
(c) If Lessee shall be in default in the performance of any of its obligations hereunder, Lessee shall pay to Lessor, on demand, all expenses incurred by Lessor as a result thereof, including reasonable attorneys' fees and expenses.

Paragraphs 9 and 12 of the Sublease require Revco, at its own expense, to maintain and insure the Premises. The Rejection Letter sent to Kandist stated:

We have made arrangements to have the keys to the property delivered to you and to terminate the utilities servicing the property. *The responsibility for the property is now yours and the undersigned assumes no further responsibility as to this property. You should take any necessary action to protect your interests in the property.* (emphasis added.)

The Rejection Letter clearly communicated to Kandist that as of October 24, 1988 Revco assumed no further liability under the Sublease. Revco presented no evidence to this Court that Revco continued to maintain and insure the Premises after the date of the Rejection Letter as required by Sublease paragraphs 9 and 12.

■ This Court finds that Kandist incurred expenses totalling $12,363.44 to maintain and insure the Premises after receipt of the Rejection Letter. [Finding No. 13(a) through (i)]. Kandist incurred these expenses for obligations which Revco was liable for until the effective date of the rejection of the Sublease. Section 365(d)(3). As Revco failed to perform its obligations under paragraphs 9 and 12 of the Sublease this Court concludes that Revco shall reimburse the sum of $12,363.44 to Kandist for all expenses incurred for maintenance and insurance.

■ Kandist also seeks reimbursement of attorneys' fees related to the rejection of the lease. Kandist requests reimbursement for legal services of $1,235.02 for Rosenman & Colin and $869.00 for John J. Guy. [Finding No. 13(j) and (k)].

Kandist submits *In re Gillis,* 92 B.R. 461 (Bankr.D.Hawaii 1988), *In re Westview 74th Street Drug Corp.,* 59 B.R. 747, 756 (Bankr.S.D.N.Y.1986) and *255 Turnpike Associates v. J.W. Mays, Inc. (In re J.W. Mays, Inc.),* 30 B.R. 769, 770–71 (Bankr.S.D.N.Y.1983) in support of its request.

In *Westview 74th Street* the court allowed reasonable attorneys' fees when the lease provided for a landlord's right to collect attorneys' fees in connection with curing a default and in compensation for the landlord's actual pecuniary loss under Section 365. In that case the tenant failed to pay a portion of rent due under the lease and the landlord opposed tenant's motion to assume the lease and cure defaults. In the *J.W. Mays* case the court held that attorneys' fees would be allowed only if the lease specifically provided for payment. The *Gillis* case involved a landlord's application for administrative expenses for a rejected lease. The court allowed rent and attorneys' fees as administrative expenses and found the rent and attorneys' fees as provided in the lease were reasonable. *Id.* at 465.

In reviewing the relevant portions of the Sublease this Court concludes that Sublease paragraph 19(c) is applicable to Kandist's request and provides that Revco is liable to Kandist for reasonable attorneys'

fees and expenses resulting from any default by Revco.

In the instant matter Kandist incurred expenses for attorneys' fees related to Revco's rejection of the Sublease and in seeking full rental obligations Revco had failed to pay. Revco defaulted in its lease obligations after sending the Rejection Letter. The Sublease expressly provides for Kandist to recover reasonable attorneys' fees related to any default, and accordingly, Revco shall be ordered to reimburse Kandist for reasonable attorneys' fees in this proceeding.

The Court has reviewed the documents detailing attorneys' fees incurred. (Kandist Exhibits 12 and 13) Upon review of the exhibits this Court finds that reasonable attorneys' fees incurred related to this matter amount to $1,164.00 for Rosenman & Colin and $869.00 for John J. Guy. The Court allows $1,164.00 of the $1,235.02 requested fees for Rosenman & Colin for the time charges from September 9, 1988 through December 13, 1988 related to the default and rejection.

The Court has reviewed the disbursements itemization for Rosenman & Colin and is unable to determine if any disbursements were related to the instant matter as to the remaining balance of $71.02 requested. Accordingly, no reimbursement for disbursements will be ordered.

The itemization of time charges submitted for John J. Guy are sufficiently detailed and the Court finds the total sum of $869.00 reasonable for the services rendered.

Based upon the foregoing Findings of Fact and Conclusions of Law this Court concludes that the effective date of the rejection of the Sublease was December 13, 1988. This Court further concludes that Revco is obligated to reimburse Kandist a total sum of $120,733.60 for the following amounts: 1) $106,337.16 for unpaid rent obligations under the Sublease for the period of October 25, 1988 through December 13, 1988; 2) $12,363.44 for expenses incurred for maintenance and insurance; and 3) $2,033.00 for attorneys' fees. A separate order shall be entered in accordance with these Findings and Conclusions.