**In re TechDYN SYSTEMS CORP., Debtor.**

**United States of America, Plaintiff,**

**v.**

**TechDyn Systems Corp., Defendant.**

**Bankruptcy Nos. 99–11706–SSM, 99–0818.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

July 7, 1999.

Nicholas D. Vlissides, Vlissides & Keisler, P.C., Fairfax, VA, for debtor.

Robert K. Coulter, Assistant United States Attorney, Alexandria, VA, for the United States.

Jack Frankel, Office of the United States Trustee, Alexandria, VA.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

Before the court is the motion of the United States of America for relief from the automatic stay in order to terminate certain government contracts with the

debtor. A preliminary hearing was held on June 16, 1999, at which the debtor in possession consented to relief with respect to certain of the contracts it did not desire to assume but opposed relief with respect to the remaining contracts.[1] The sole issue presently before the court is whether the debtor, as debtor in possession, is barred under Bankruptcy Code § 365(c) from *assuming,* without the government's consent, a contract which the debtor is statutorily barred from *assigning* under the Anti–Assignment Act. The resolution of this issue requires the court to determine whether it should follow those courts that have adopted the "hypothetical" rather than the "actual" test for the assumption of nonassignable executory contracts.[2]

### Background

TechDyn Systems Corporation ("TechDyn"), whose primary business is furnishing telephone systems and support to military bases, filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in this court on April 2, 1999. It has continued since that date in control of its business as a debtor in possession. Prior to bankruptcy, TechDyn had entered into six contracts with the United States Army, each requiring the debtor to maintain and repair the telecommunication networks at specific Army installations. It is undisputed that TechDyn, shortly after filing its petition, failed to meet its payroll, thereby prompting its employees to cease working. Consequently, the government asserts, the affected installations have been required to make interim, emergency arrangements with other contractors to sustain the telecommunication networks. Termination of the debtor's contracts would free up funds obligated for those contracts for use in establishing long-term replacement contracts.

On May 18, 1999, the present motion was filed seeking to terminate the contracts with the debtor. The government relies on § 362(d)(1), Bankruptcy Code, which provides that the court may terminate the automatic stay "for cause." The United States maintains that reliable, long-term telecommunication capabilities at each installation affected by the debtor's bankruptcy is vital to the completion of ongoing military missions. Fort Benning, for example, is said to be involved in supporting contingency operations in Kosovo. In light of the continued post-petition defaults, the government questions whether the debtor will ever be able to perform its duties under the contracts. In sum, it is the United States' position that the national security interests at stake outweigh any

---

1. The debtor agreed to lift the automatic stay in connection with the following three contracts: (1) Fort McClellan (Contract No. DABT02–97–0007), (2) Letterkenny Army Depot (Contract No. DAEA32–95–C–0054), and (3) Tobyhanna Army Depot (Contract No. DAEA32–95–C–0048). According to the debtor, the remaining three contracts at issue involve Fort Eustis (Contract No. DABT57–97–C–0003), Fort Buchanan (Contract No. DAEA32–96–C–0013), and Fort Benning (DABT10–98–D–32). However, the government's motion and accompanying memorandum does not seek relief from the automatic stay with respect to the Fort Eustis contract. The United States asserts in a footnote to its motion that this contract was terminated pre-petition. The debtor disputes the government's characterization, taking the position that the Fort Eustis contract was not properly terminated before the filing of the bankruptcy petition. Regardless of the dispute, the circumstances surrounding the Ft. Eustis con-tract are not before the court. Accordingly, this opinion will focus only on the Fort Buchanan and Fort Benning contracts. The debtor will need to file an appropriate motion or adversary proceeding to resolve the status of the Fort Eustis contract.

2. As discussed below, the government also urges that, even if the contracts in question could as a theoretical matter be assumed over its objection, the contracts are seriously in default and the debtor is unable as a practical matter to cure the present defaults or to provide adequate assurance of future performance. The court ruled at the preliminary hearing that it would first rule on the legal issue of whether the contracts could be assumed at all, and, if that issue were resolved in favor of the debtor, would then take evidence as to whether "cause" nevertheless existed to permit the Government to terminate the contracts.

benefit to the debtor and its estate from assumption of the contracts. Additionally—and that is the issue immediately before the court—the government argues that the debtor's legal inability to assume the contracts over the government's objection provides more than sufficient "cause" for relief from stay to terminate the contracts.[3]

## Discussion

■ Section 365(a), Bankruptcy Code, authorizes a trustee, subject to the court's approval, "[to] assume or reject any executory contract or unexpired lease of the debtor." In chapter 11 case where no trustee has been appointed, a debtor, as debtor in possession, has (except for the right of compensation) "all the rights ... and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." § 1107(a), Bankruptcy Code. Therefore, a debtor in possession has the option of assuming or rejecting executory contracts to which the debtor is a party. *In re James Cable Partners,* 27 F.3d 534, 537 (11th Cir.1994). Despite this broad authority, § 365(a) is subject to exceptions. One of them is § 365(c)(1), Bankruptcy Code, which provides:

> The trustee may not *assume or assign* an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease *from accepting performance from or rendering performance to an entity other than the debtor or the debt-*

or *in possession,* whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

> (B) such party does not consent to such assumption or assignment[.]

(emphasis added). The United States contends that the plain language of § 365(c)(1) effectively prohibits the debtor from assuming the Fort Benning and Fort Buchanan contracts without its consent.[4] Arguing for a strict construction of the Bankruptcy Code, the government urges the court to look no further than the text of § 365(c)(1) itself to conclude that a contract that under applicable nonbankruptcy law cannot be assigned likewise cannot be assumed. This reading—sometimes referred to as the "hypothetical test"—has been accepted by the district court in this district, as well as by a majority of the circuit courts that have considered the issue. *In re Catron,* 158 B.R. 629, 633 (E.D.Va.1993), *aff'd* 25 F.3d 1038 (4th Cir. 1994) (unpublished op.); *In re Catapult Entertainment, Inc.,* 165 F.3d 747, 750 (9th Cir.1999); *In re West Electronics, Inc.* 852 F.2d 79, 83 (3d Cir.1988); *In re James Cable Partners,* 27 F.3d 534, 537 (11th Cir.1994) (describing § 365(c) as presenting a hypothetical question); *but see Institut Pasteur v. Cambridge Biotech Corp.,* 104 F.3d 489, 493 (1st Cir.), *cert. denied,* 521 U.S. 1120, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997).

■ The debtor, not surprisingly, argues against a literal reading of § 365(c). Instead, the court is asked to accept the "actual test" under which the debtor in

---

3. The debtor does not dispute that "cause" would exist to terminate the automatic stay if it is determined that the contracts at issue are not assumable.

4. As a preliminary matter, there is no dispute that the contracts before the court are "executory." Congress has not chosen to define the term "executory contracts," but most courts have adopted the classic definition first articulated by professor Vern Countryman: "A contract under which the obligations of both

the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." Vern Countryman, "Executory Contracts in Bankruptcy: Part I," 57 Minn.L.Rev. 439 (1973). *See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1045 (4th Cir.1985) ("a contract is executory if performance is due to some extent on both sides.").

possession may assume a nonassignable contract as long as there is no attempt to assign it. This test, as the debtor correctly notes, has been adopted by a clear majority of the lower courts. *See, e.g., In re Cajun Elec. Power Coop., Inc.*, 230 B.R. 693 (Bankr.M.D.La.1999); *Texaco Inc. v. Louisiana Land & Exploration Co.*, 136 B.R. 658 (M.D.La.1992); *In re GP Express Airlines, Inc.*, 200 B.R. 222 (Bankr.D.Neb. 1996); *In re Am. Ship Bldg. Co.*, 164 B.R. 358 (Bankr.M.D.Fla.1994); *In re Hartec Enters., Inc.*, 117 B.R. 865 (Bankr. W.D.Tex.1990), *vacated on other grounds*, 130 B.R. 929 (W.D.Tex.1991); *In re Cardinal Indus., Inc.*, 116 B.R. 964 (Bankr. S.D.Ohio 1990). The Fourth Circuit has not yet taken a stand.[5] Nevertheless, after carefully considering the conflicting case law, this court is compelled to agree with those courts that have adopted the hypothetical test.

 Debtor's principal problem is how to overcome the clear, unambiguous language of § 365(c)(1), Bankruptcy Code. The Supreme Court has repeatedly held that in interpreting provisions of the Bankruptcy Code, a court must begin with the statute itself. *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When the statute is clear and unambiguous on its face, the court must apply the plain meaning of the statute and enforce it according to its terms. *Patterson v. Shumate*, 504 U.S. 753, 757, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) ("the plain language of the Bankruptcy Code ... is our determinant"); *Toibb v. Radloff*, 501 U.S. 157, 160, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) ("In our view, the plain language of the Bankruptcy Code disposes of the question before us."); *Ron Pair Enterprises*, 489 U.S. at 241, 109 S.Ct. at 1030 ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute").

 As noted, § 365(c)(1)(A) states that the debtor may not "assume or assign" an executory contract if "applicable [nonbankruptcy] law" excuses a party from accepting performance from an entity other than the debtor or debtor in possession. As an initial matter, the debtor does not dispute that the Anti–Assignment Act, 41 U.S.C. § 15, prohibits the assignment of government contracts to a third party.[6] As a consequence, the remaining text of § 365(c)(1) unmistakably makes it clear that the debtor may neither assume nor assign the contracts without the government's consent. The operative clause in the preamble ("the trustee may not assume or assign") is phrased in the disjunctive, which ineluctably leads to the conclusion that a debtor in possession may not assume an executory contract if applicable law bars its assignment. Nothing in the language of § 365(c)(1)(A) lends support to the debtor's position that assumption is prohibited only if the debtor also intends to assign. Because the government in this case is unwilling to consent to the assump-

---

5. In *Dept. of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1473–74 (4th Cir.1990), the Government argued the issue, but the Court declined to address it, since the Government had not appealed the order confirming the plan, and confirmation of the plan was res judicata as to the debtor's right to assume its contract with the government. The Fourth Circuit's affirmance of *Catron*, "substantially on the reasoning of the district court," 1994 WL 258400 at *1, is of course suggestive, but without precedential effect, since the opinion is unpublished.

6. 41 U.S.C. § 15 reads in pertinent part as follows:

(a) Transfer
No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.

tion of the contracts, the court is left to "enforce the statute according to its terms." *Patterson,* 504 U.S. at 759, 112 S.Ct. at 2247.

In an attempt to discredit the "hypothetical test," the debtor focuses on the "separate entity" theory discussed in *West,* 852 F.2d at 83, and *Catron,* 158 B.R. at 637–38. At the heart of these opinions, TechDyn argues, lies an erroneous distinction between a prepetition debtor and post-petition debtor in possession. The Third Circuit in *West* suggested that, upon the filing of a chapter 11 bankruptcy, a prepetition debtor becomes a materially distinct entity in the form of a debtor in possession. *Catron* —which involved the exercise of a buy-out provision in a partnership agreement—better explains this transformation, reasoning that the fiduciary obligations of the prepetition debtor are materially different from those of a debtor in possession. 158 B.R. at 638.

It is true that the "separate entity" theory is not without its problems in the context of § 365(c)(1),[7] but neither *West* nor *Catron* is wholly dependent on a separate entity analysis and both courts rely on other considerations as well. In any event, as *Catapult* observes, the question of whether the debtor and debtor in possession are separate entities is a red herring, since the plain language of the statute equally prohibits assumption where the other party cannot be compelled to accept performance from someone *other* than the debtor *or the debtor in possession.* See 165 F.3d at 755 n. 9 ("We emphasize that our holding today is based on the plain language of the statute, and does not rely on the 'separate entity' theory[.]").

Oddly, it is precisely the addition of the phrase "or debtor in possession" to the statute in 1984[8] that TechDyn relies on to support its argument that Congress intended to articulate an "actual test" in which only assignment, and not assumption, of nonassignable contracts would be prohibited. TechDyn urges that the purpose of the 1984 amendment was to ensure that a debtor in possession would not be barred, simply because of its change in fiduciary duties, from continuing to perform its contractual duties. *Hartec,* 117 B.R. at 873. In particular, the debtor relies on the exhaustive analysis of the legislative history of § 365(c)(1) as set forth in *Cardinal Industries,* 116 B.R. at 978–80.

■ The debtor's reliance on legislative history as proof that the statute must mean something other than what it plainly seems to say is misplaced. It is only when a statute is ambiguous that a court is permitted to look behind the words to attempt to derive the legislature's intent. *Patterson,* 504 U.S. at 761, 112 S.Ct. at 2242 ("Although courts 'appropriately may refer to a statute's legislative history to resolve statutory ambiguity,' the clarity of the statutory language at issue in this case obviates the need for any such inquiry.") *quoting Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991); *Dewsnup v. Timm,* 502 U.S. 410,

7. The lower courts that have rejected the "separate entity" theory consistently cite to the Supreme Court's observation in *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1198, 79 L.Ed.2d 482 (1984), "[i]t is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition[.]"

8. Section 365(c)(1)(A) originally read in pertinent part: "if applicable law excuses a party ... to such contract or lease from accepting performance from or rendering performance to the *trustee or an assignee of such contract or lease* ... " Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978) (emphasis added). In 1984, Congress amended this subsection by replacing "the trustee" with "an entity other than the debtor or the debtor in possession." Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Pub.L. No. 98–353, § 456, 98 Stat. 363, 376 (1984). Finally, the phrase "an assignee of such contract or lease" was deleted from § 365(c)(1)(A) in 1986. Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3008 (1986).

419–20, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992); *Ron Pair Enterprises,* 489 U.S. at 235, 109 S.Ct. at 1030.

■ The debtor next urges, with somewhat more force, that a rigid, literal construction of § 365(c)(1) would bring it into conflict with—or at least would be inconsistent with the policy behind—the anti-forfeiture provisions of §§ 365(b)(2) and (e)(1), Bankruptcy Code, which in general terms invalidate contract provisions that treat bankruptcy or the appointment of a bankruptcy trustee as events of default. *See Hartec,* 117 B.R. at 872. The clear purpose of those provisions is to preserve valuable contracts for the benefit of the debtor's creditors and to prevent that benefit from being lost simply because of the inclusion in the contract or lease of so-called "ipso facto" clauses. *Cf.* 3 Collier on Bankruptcy ¶ 365.07, at 365–66 (Lawrence P. King, ed., 15th ed. rev. 1999) ("The broad language of section 365(e) is intended to address provisions in contracts or leases that lead to the same effect as a clause triggered by bankruptcy, without mentioning bankruptcy.").

■ Nevertheless, a court should venture beyond the plain reading of a statute only in the rare instance in which "a literal application of the statute would produce an absurd result," *Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.),* 27 F.3d 980, 983 (4th Cir.1994) (citing to *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940)), or, in the case of the Bankruptcy Code, lead to a result demonstrably at odds with pre-Code practice without any apparent indication that Congress intended a change, *see Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In this connection, the anti-forfeiture language of § 365(e)(1) is quite carefully limited to contract terminations that would be occasioned "*solely* because of a provision *in such contract* or lease[.]" (emphasis added). Congress could well have determined that purely private, contractual bars

to assignment should be treated differently from the traditional, policy-based exceptions to assignability—such as for personal service contracts—long recognized by the law. Accordingly, while it may well be argued that a strict reading of § 365(c)(1) is inconsistent with the general goal of maximizing the value of the bankruptcy estate for the benefit of the debtor's creditors, it certainly does not lead to a result that is absurd, in the sense that Congress could not have rationally have made a distinction between contractual and extra-contractual prohibitions on assignment. *Hartec* argues that a literal interpretation of § 365(c)(1) would "permit legislatures to enact laws (disguised as anti-assignment laws) having the impact of 'ipso facto' clauses, [thus] undermining these prohibitions." 117 B.R. at 872 (parenthesis added). While that possibility is certainly troubling, such concerns are properly directed to Congress.

The final argument propounded by the TechDyn is that the "actual test" better serves the fundamental aims of bankruptcy of providing for the use of assets by a debtor in possession to promote its successful reorganization. Throughout oral argument, debtor's counsel repeatedly stated that the "hypothetical test" stands bankruptcy law upon its head. The debtor also stresses that permitting it to assume the contracts would not frustrate the purpose of the Anti–Assignment Act, because there is no practical difference between the pre-petition debtor and the debtor in possession. The debtor's argument is supported by a leading treatise, which cogently observes:

> As a matter of policy, a refusal to permit debtors in possession to assume otherwise nonassignable contracts would present problems for debtors whenever the debtor's business is one in which major contracts are nonassignable under nonbankruptcy law. Such debtors will not, as a practical matter, be able to avail themselves of the benefits of chapter 11 because they will not be able to perform their prebankruptcy contracts

without permission from the nondebtor parties to the contracts.

3 Collier on Bankruptcy ¶ 365.06[1][d], at 365–61 (Lawrence P. King, ed., 15th ed. rev.1999).

The court is sympathetic with such concerns and recognizes that a blanket refusal to permit a reorganizing debtor to assume valuable Government contracts over the Government's objection may well represent poor bankruptcy policy. Certainly, where a debtor's sole or primary assets consist, as here, of Government contracts, application of the "hypothetical test," effectively gives the Government a veto over any reorganization. Nevertheless, bad policy does not justify a judicial rewrite of the Bankruptcy Code. *Catapult*, 165 F.3d at 754 ("Policy arguments cannot displace the plain language of the statute[.]"). The court must presume that Congress means what it says and says what it means through the passage of statutes. This court's duty is to apply the statute as written; and if the unfortunate result is to hinder reorganization efforts that ought to succeed, the appropriate forum in which to raise those concerns is the halls of Congress.

### Conclusion

Because the Anti–Assignment Act plainly prohibits assignment of the debtor's contract with the United States Government, the debtor, in its capacity as debtor in possession, is barred by § 365(c)(1) from assuming those contracts over the Government's objection even though the debtor does not intend to assign them. Since the Government does not consent to assumption, the automatic stay, which presently bars the Government from formally terminating the contracts, serves no purpose, and a separate order will be entered modifying the automatic stay to permit such contracts to be formally terminated.