**Jimmie W. FINNIE, Appellant,**

v.

**FIRST UNION NATIONAL BANK, Appellee.**

**No. 2:02CV94.**

United States District Court, E.D. Virginia, Norfolk Division.

April 3, 2002.

---

Daniel R. Warman, Esquire, Baker and Warman, Norfolk, VA, for Appellant.

Richard E. Biemiller, Esquire, Wolcott, Rivers, Wheary, Basnight & Kelly, P.C., Virginia Beach, VA, for Appellee.

Debera F. Conlon, Esquire, Office of U.S. Trustee, Norfolk, VA, U.S. Trustee.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter is before the court on appeal, pursuant to 28 U.S.C. § 158(a), from a decision of the United States Bankruptcy Court for the Eastern District of Virginia. On August 13, 2001, the bankruptcy court entered an order in which it granted First Union National Bank's motion to dismiss a complaint brought by J.W. Finnie. For the reasons set forth below, the bankruptcy court's order is AFFIRMED.

### I. Factual and Procedural History [1]

In the spring of 1989, appellant filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia. Among his listed debts, appellant included an unsecured credit card debt owed to Southeast Bank National Association ("Southeast"), in the amount of $7,175.00. On August 16, 1989, appellant received a discharge of the scheduled debt owed to Southeast. Southeast received notice of the discharge. Subsequent to the discharge, First Union National Bank ("First Union") acquired Southeast and, by that acquisition, gained knowledge that appellant's debt had been discharged. On September 25, 1996, First Union sold the discharged account to Commercial Financial Services, Inc. ("CFS"), a collection agency.

---

1. The facts set forth in this opinion are taken from appellant's first and second amended complaints, which the court assumes to be true for the purposes of this appeal.

CFS attempted to collect this debt by sending a letter to the appellant, demanding payment for the discharged loan. In 1998, CFS filed for bankruptcy and was subsequently acquired by NCO Financial Systems, Inc. ("NCO"). NCO attempted to collect on the discharged debt and also reported the debt to credit card reporting agencies, resulting in adverse credit reports for the appellant.

On April 10, 2000, appellant filed a complaint in this court against NCO; Michael Farris, President of NCO; First Union; and Ken Thompson, President of First Union, alleging numerous causes of action based on the actions of these companies with respect to the discharged debt. On April 19, 2001, appellant filed an amended complaint, and on May 19, 2001, appellant filed a second amended complaint. On July 10, 2000, appellant filed a notice of dismissal with respect to Michael Farris and Ken Thompson. By order dated December 20, 2000, United States District Judge Raymond A. Jackson dismissed all of the appellant's claims, with the exception of appellant's claim that NCO and First Union violated the statutory injunction in 11 U.S.C. § 524(a) by attempting to collect the discharged debt. Judge Jackson referred that claim to the bankruptcy court for adjudication.

On July 17, 2001, United States Bankruptcy Judge Stephen C. St. John held a hearing with regard to the motions to dismiss appellant's remaining claim, filed by NCO and First Union. By order dated August 13, 2001, Judge St. John granted the motions to dismiss. On August 22, 2001, appellant filed a notice of appeal. On January 14, 2002, pursuant to appellant's request, the bankruptcy court entered a motion to dismiss without prejudice appellant's claim against NCO. On February 25, 2002, appellant filed a brief in support of his appeal; on March 6, 2002, First Union filed its brief. On March 14, 2002, appellant filed a reply brief. This matter is now ripe for review.

## II. Standard of Review

On appeal, a district court reviews a bankruptcy court's findings of fact under the clearly erroneous standard; the bankruptcy court's conclusions of law are reviewed de novo. Pursuant to Bankruptcy Rule 7012(b), Rule 12(b)(6) of the Federal Rules of Civil Procedure applies to adversary procedures. Thus, this court must make a de novo determination as to whether appellant's amended complaint "fail[ed] to state a claim upon which relief can be granted." *Fed.R.Civ.P.* 12(b)(6).

## III. Analysis

Appellant argues that the bankruptcy court erred as a matter of law by holding that his amended complaint fails to state a claim upon which relief can be granted. According to appellant, the plain language of § 524(a)(2) prohibits the actions taken by First National with respect to his discharged debt. In short, he argues that First Union's sale of the discharged account to a collection agency amounted to an improper attempt to collect the discharged debt. Appellant's position is without merit.

Section 524(a)(2) enjoins creditors from attempting to offset, collect, or recover a discharged debt as a personal liability of the debtor.[2] This injunction embodies the concept of a "fresh start" for

---

**2.** Section 524 provides:
    (a) A discharge in a case under this title—
      (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not the discharge of such debt is waived . . . .

a debtor: the discharge "allow[s] the debtor to begin anew with a debt-free start and without pressure from creditors to repay discharged debts." *In re Lafferty,* 229 B.R. 707, 712 (Bankr.N.D.Ohio 1998) (citations omitted); *see also In re Walker,* 180 B.R. 834, 842 (Bankr.W.D.La.1995) ("The injunction is intentionally broad in scope and is intended to preclude virtually all actions by a creditor to collect personally from the debtor."). Thus, there is no question that an attempt by First Union to collect on the discharged debt would violate the injunction contained within § 524(a)(2).

██ The trouble with appellant's argument, however, is that it would have the court expand § 524(a)(2) beyond the plain language contained within the statute. The court must give the terms within a statute their plain meaning. *See, e.g., Sentara Virginia Beach Gen. Hosp. v. LeBeau,* 188 F.Supp.2d 623, 625–26 (E.D.Va. 2002). Regardless of how broadly this court construes the language in § 524(a)(2), the statute's prohibitions apply only to actions taken by a creditor to collect *from* the debtor. While a creditor is prohibited from utilizing a collection agency to recover a discharged debt on its behalf, *see, e.g. In re Walker,* 180 B.R. at

844, there is no prohibition on the creditor *selling* the discharged debt, presumably at a greatly discounted rate, to a third party. An effort by the *purchaser* of the discharged debt to collect on that debt may be a violation of the injunction, but that is not the issue before this court. Absent an agency relationship between the seller of a discharged debt and the purchaser of that debt, which the appellant does not allege in his amended complaint, the seller of a discharged debt is not liable for the purchaser's subsequent attempt to collect on that debt.[3] Accordingly, the bankruptcy court's decision is AFFIRMED.

The Clerk is DIRECTED to send a copy of this Opinion to counsel for appellant, counsel for appellee, and counsel for NCO.

IT IS SO ORDERED.

---

**3.** In support of his position, appellant relies heavily on the reasoning of the court in *In re Lafferty,* 229 B.R. 707 (Bankr.N.D.Ohio 1998). The holding in that opinion undoubtedly supports his argument. In that case, the court addressed the issue of whether Ohio Savings, the holder of a discharged debt, violated § 524(a)(2) when it sold the debt to National, a company that subsequently attempted to collect on that debt. As noted by the court:

> The selling of accounts is a deliberate act to collect on a discharged debt.... While Ohio Savings argues that it cannot be responsible for the actions of National and the filing of the lawsuits against the debtors, Ohio Savings knew that National would take action to collect against the debtors on those accounts and had received

notice of the debtors' discharges. Ohio Savings was in the position to prevent such actions through proper identification of those accounts that had been discharged in bankruptcy and chose to handle such notice of discharge in a nonchalant, perhaps even cavalier, manner.

*Id.* at 714. In reviewing the opinion, this court believes the holding was based largely on the egregious actions taken by the creditors in that case. With due respect to that bankruptcy court, this court finds the holding to be contrary to the plain language contained within § 524(a)(2), and the court found no other case interpreting § 524(a)(2) so expansively. Thus, this court declines to follow the reasoning employed by the bankruptcy court in Ohio.