**DYNAMIC CHANGES HYPNOSIS CENTER, INC., Appellant,**

v.

**PCH HOLDING, LLC, a/k/a Positive Changes Hypnosis Corporation, a/k/a Positive Changes, a/k/a Positive Changes Distribution Corporation, a/k/a Hampton Roads Hypnosis, LLC; Lifestyle Improvement Centers, LLC; and W. Clarkson McDow, Jr., United States Trustee, Appellees.**

No. 2:03cv791.

United States District Court, E.D. Virginia, Norfolk Division.

March 10, 2004.

Donald C. Schultz, Crenshaw, Ware & Martin PLC, Norfolk, VA, Counsel for Appellant.

Karen M. Crowley, Lawrence H. Glanzer, Marcus, Santoro & Kozak, Chesapeake, VA, Counsel for Appellees PCH Holding, LLC and Hampton Roads Hypnosis.

Charles G. Scifres, Megan E. Burns, Williams Mullen PC, Virginia Beach, VA, Bankruptcy Law Reporter, Chicago, IL, Bankruptcy Service, The Lawyers Co–Operative Publishing, Rochester, NY, Bankruptcy Court Decisions, Horsham, PA, Counsel for Appellees Lifestyle Improvement Centers.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on appeal, pursuant to 28 U.S.C. § 158(a), from a decision of the United States Bankruptcy

Court for the Eastern District of Virginia. On September 25, 2003, the bankruptcy court entered a Memorandum Opinion and Order denying appellant Dynamic Changes Hypnosis Center, Inc., relief under Federal Rule of Bankruptcy Procedure 9024 from an Order entered June 2, 2003. For the reasons set forth below, the bankruptcy court's September 25, 2003 Order is **AFFIRMED.**

### I. Factual and Procedural History

Debtor-appellee PCH Holding, LLC, ("Positive Changes"), a Virginia company with its principal place of business in Virginia Beach, developed and owned the intellectual property rights to the "Positive Changes Hypnosis Practice–Builder Program." [1] The Practice–Builder Program is a system for opening, operating, advertising, and managing individual hypnosis centers.

On September 13, 1999, Positive Changes and appellant Dynamic Changes Hypnosis Center, Inc., entered into a Master License Agreement for New York City ("Licensing Agreement"), under which

Positive Changes sold to appellant an exclusive license to use and sublicense the Practice–Builder Program in the New York City area. Appellant thereafter operated its own hypnosis centers in the New York City area, but did not sublicense the Practice–Builder Program. (Mem. Op. and Order, Sept. 25, 2003, at 3.) The Licensing Agreement was appellant's "single largest and most valuable asset," according to the company's principal owner, Richard Schefren ("Schefren"). (*Id.* at 3–4.) Schefren also testified that appellant's income rose from approximately $750,000 in 1999 to approximately $7,700,000 in 2002. (*Id.* at 4.)

On February 7, 2003, Positive Changes filed a voluntary Chapter 11 bankruptcy petition. On April 8, 2003, pursuant to 11 U.S.C. § 365(a), [2] Positive Changes filed a Motion to Reject Certain Executory Contracts and Unexpired Leases. [3] The motion requested that the bankruptcy court order all licensees that desired to retain their rights under valid intellectual property licenses pursuant to 11 U.S.C. § 365(n)(1)(B) [4] do so in writing no later

---

1. On April 10, 2003, appellee Lifestyle Improvement Centers, LLC ("Lifestyle"), purchased all of Positive Changes operating assets, including its intellectual property.

2. Title 11 U.S.C. § 365(a) provides that "[e]xcept as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C.A. § 365(a) (1993). Appellee W. Clarkson McDow, Jr., the United States Trustee, did not take an active interest in Positive Changes' bankruptcy until late May, 2003. Nevertheless, it is well-established that a Chapter 11 debtor-in-possession has the same rights as a trustee under § 365(a). *See, e.g., In re TechDyn Sys. Corp.,* 235 B.R. 857, 860 (Bankr.E.D.Va.1999); *In re Constant Care Cmty. Health Ctr., Inc.,* 99 B.R. 697, 701 (Bankr.D.Md.1989).

3. Because Lifestyle purchased debtor's operating assets on April 10, 2003, it ultimately received the benefit of debtor's April 7, 2003 motion to reject the Licensing Agreement. *See supra* note 1.

4. That code section provides:

 If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect to retain its rights (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract) under such contract and under any agreement supplementary to such contract, to such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law), as such rights existed immediately before the case

than May 23, 2003. (Mot. to Reject Certain Executory Contracts and Unexpired Leases, at 5.) A copy of the motion was mailed to and received by appellant. (Mem. Op. and Order, September 25, 2003, at 3.) On April 15, 2003, an attorney for Positive Changes filed with the bankruptcy court and mailed to appellant a Notice of Hearing on the motion to reject, informing appellant that the bankruptcy court would hold a hearing on the motion on May 7, 2003. The bankruptcy court found that appellant received notice of this hearing. (*Id.* at 9.) Nevertheless, unlike some of the other parties holding licenses that Positive Changes was seeking to reject, appellant did not send a representative to the May 7, 2003 hearing.

The bankruptcy judge granted Positive Changes' motion at the May 7, 2003 hearing, and, consistent with the proposal in Positive Changes' motion, set the date of May 23, 2003, for appellant and others to retain their rights under the licensing agreements. The bankruptcy judge requested that the attorney for Positive Changes draft a written order memorializing the May 7, 2003 bench order. An entry on the docket indicates that Positive Changes' motion was granted as to appellant at the hearing. However, no separate docket entry noting an order was made on that date.

On or before May 13, 2003, appellant contacted a bankruptcy attorney with the firm of Reisman, Perez & Reisman in New York City, to discuss Positive Changes' motion to reject. (Stip. of Fact, at 2.) That attorney contacted counsel for Positive Changes on May 14, 2003, to discuss the

rejection motion, but did not take any further action on behalf of appellant. (*Id.*) On May 16, 2003, Positive Changes mailed a copy of the proposed written order setting forth the May 7, 2003 bench ruling to appellant. The bankruptcy court found that the proposed order was received by appellant on May 20, 2003.[5] (Mem. Op. and Order, Sept. 25, 2003, at 3.) Appellant does not contest this finding.

In the meantime, dissatisfied with the advice he was receiving from Reisman, Perez & Reisman, Schefren fired the firm and set out to find new counsel. (Mem. Op. and Order, Sept. 25, 2003, at 4.) On May 28, 2003, five days after the election date set by the bankruptcy judge, Schefren retained new counsel to represent appellant. (*Id.*) On May 29, 2003, that attorney sent a letter to the bankruptcy judge indicating that appellant wished to retain its rights under the Licensing Agreement. Despite this letter, the bankruptcy judge signed the proposed written order on May 30, 2003, and it was entered on June 2, 2003. Also on June 2, 2003, ten days after the election deadline, appellant filed a Notice of Election pursuant to 11 U.S.C. § 365(n)(1)(B). Appellant did not note a timely appeal from the bankruptcy court's June 2, 2003 Order.

Instead, on June 23, 2003, appellant filed in the bankruptcy court a motion to reconsider the Order entered June 2, 2003, pursuant to Federal Rule of Bankruptcy Procedure 9024, or, in the alternative, to grant appellant an extension of time in which to note an appeal from that Order pursuant to Federal Rules of Bankruptcy Procedure 8002(c)(1) and (2). Appellant's motion was

commenced, for (i) the duration of the contract; and (ii) any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law.

11 U.S.C.A. § 365(n)(1)(B) (West.Supp.2003).

5. It is not clear from the record when the bankruptcy court received the proposed order. However, the date of receipt by the bankruptcy court of the proposed written order is not dispositive of the issues on appeal.

fully briefed and the bankruptcy court held a hearing on the motion on September 2, 2003. Schefren and others testified and argument was heard from counsel for appellant and for appellees, Positive Changes and Lifestyle. On September 25, 2003, by written Memorandum Opinion and Order, the bankruptcy judge denied appellant's motion to reconsider, finding that appellant's failure to comply with the May 23, 2003, deadline was not the result of excusable neglect and that the Order entered June 2, 2003, did not violate appellant's due process rights. (Mem. Op. and Order, Sept. 25, 2003, at 8–10.) Further, finding that appellant's failure to note a timely appeal was not the result of excusable neglect, the bankruptcy court denied the motion for an extension of time to file an appeal. (*Id.* at 10–11.)

On October 3, 2003, appellant noted an appeal of the bankruptcy court's September 25, 2003 Order denying relief under Bankruptcy Rule 9024. Appellant does not appeal the bankruptcy court's denial of its motion to extend the time in which to appeal the June 2, 2003 Order. The parties have fully briefed the issues and no hearing is necessary for the resolution of this matter. The Bankruptcy Court's September 25, 2003 Order is ripe for review.

## II. Standard of Review

■ On appeal, this court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Finnie v. First Union Nat'l Bank,* 275 B.R. 743, 745 (E.D.Va.2002). Federal Rule of Bankruptcy Procedure 9024, "Relief from Judgment or Order," states that, subject to a few exceptions not relevant here, Rule 60 of the Federal Rules of Civil Procedure applies in bankruptcy cases. Rule 60(b) provides in relevant part that

[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (4) the judgment is void; ... or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b) (2003). Orders issued under Rule 60(b) are generally reviewed under an abuse of discretion standard. *Eberhardt v. Integrated Design & Const. Co.,* 167 F.3d 861, 869 (4th Cir.1999). However, review under Rule 60(b)(4) is *de novo* because the question of a judgment's validity is purely legal. *Carter v. Fenner,* 136 F.3d 1000, 1005 (5th Cir.1998), *cert. denied,* 525 U.S. 1041, 119 S.Ct. 591, 142 L.Ed.2d 534 (1998).

## III. Analysis

The parties have set forth five issues for the court to decide on this appeal, but none has been consistent in specifying the procedural basis for each of these challenges to the bankruptcy court's order.[6] Appel-

6. For example, in appellant's "Statement of Issues to be Decided Upon [sic] Appeal" states the following five issues:
(1) Whether the Bankruptcy Court erred in holding that, as a matter of law, Dynamic Changes failed to timely avail itself of its rights in connection with its license agreement under the Bankruptcy Code;
(2) Whether the Bankruptcy Court erred in holding that, as a matter of law, the deadline suggested in the Debtor's Motion to Reject Certain Executory Contracts bound Dynamic Changes to make an election with respect to its licensing rights before the Bankruptcy Court entered an Order requiring Dynamic Changes to make such election;
(3) Whether the Bankruptcy Court erred in holding that, as a matter of law, Dynamic Changes' due process rights were not violated;
(4) Whether the Bankruptcy Court erred in holding that, as a matter of law, Dynamic Changes' ability to make an election with

lant is appealing the bankruptcy court's denial of a motion brought under Rule 60(b)(1), (4), and (6). Therefore, from the court's perspective, there are only three issues: (1) whether the bankruptcy judge abused his discretion in determining that appellant's failure to comply with the May 23, 2003, election deadline was not the result of mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1); (2) whether the bankruptcy court's order setting the election deadline is void under Rule 60(b)(4) based upon this court's *de novo* review of that order; and (3) whether the bankruptcy judge's determination that there was not any "other reason justifying relief from the operation of the judgment" was an abuse of discretion under Rule 60(b)(6).[7] Each issue will be considered in turn. First, however, it is useful to review some relevant bankruptcy procedures and to acknowledge the procedural error made in the bankruptcy court which gave rise to the Bankruptcy Rule 9024 motion and to this appeal.

 Federal Rule of Bankruptcy Procedure 9021 provides:

[E]xcept as otherwise provided herein, Rule 58 [of the Federal Rules of Civil Procedure] applies in cases under the [Bankruptcy] Code. Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document. A judgment is effective when entered as provided in rule 5003. The reference in [Federal Rule of Civil Procedure] 58 to Rule 79(a) [of the Federal Rules of Civil Procedure] shall be read as a reference to Rule 5003 of these rules.

Fed. R. Bankr.P. 9021. Federal Rule of Civil Procedure 54(a) provides that "'[j]udgment' as used in these rules includes a decree and any order from which an appeal lies." In the bankruptcy context, an order is "final" and therefore appealable as a matter of right under 28 U.S.C. § 158(a)[8] if it resolves a "discrete dispute[ ] within the larger case." *Sumy v. Schlossberg*, 777 F.2d 921, 923 (4th Cir. 1985). Most adversary proceedings and "contested matters" constitute discrete disputes. *Id.* Bankruptcy Rule 9014 governs "contested matters," and provides in part that "[i]n a contested matter in a case under the [Bankruptcy] Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr.P. 9014. Under Bankruptcy Rule 6006(a), "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014." Fed. R. Bankr.P. 6006(a). Bankruptcy Rule 5003(a) provides that

---

respect to its licensing rights expired before the right of election accrued under the Bankruptcy Code; and
(5) Whether the Bankruptcy Court erred in basing its denial of Dynamic Changes' Motion for Relief upon evidence not relevant to the timeliness of Dynamic Changes' election under the Bankruptcy Code.
(Dynamic Changes' Statement of Issues to be Decided Upon Appeal, at 1–2 (numbering added).)

7. Appellant cannot use this appeal from the bankruptcy court's Rule 60(b) decision to obtain complete review of the merits of the June

2, 2003 Order. *See infra* note 11. To the extent that the "Issues Presented" by appellant on appeal could be viewed as appeals on the merits of the June 2, 2003 Order, the court does not reach them.

8. In relevant part, 28 U.S.C. § 158(a) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C.A. § 158(a) (West.Supp.2003).

[t]he clerk shall keep a docket in each case under the [Bankruptcy] Code and shall enter thereon each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the United States Courts. The entry of a judgment or order in a docket shall show the date the entry is made.

Fed. R. Bankr.P. 5003(a). Finally, under Bankruptcy Rule 9022(a), a copy of the written order is then to be mailed to all contesting parties.[9] Thus, under Bankruptcy Rule 9021, an order granting a debtor-in-possession's motion to reject an executory contract is a final order because it resolves a contested matter. Therefore, a separate document setting forth that order should be entered on the day the order is made final and effective and a copy of the order should be mailed to contesting parties.[10]

■ That procedure was not followed by the bankruptcy court in this case. Instead, the bankruptcy judge issued a final ruling from the bench granting Positive Changes' motion to reject the Licensing Agreement, and directed the attorney representing Positive Changes to draft a written order setting forth the bench ruling. In other words, the bankruptcy court failed to follow Bankruptcy Rule 9024's "separate document requirement" by issuing a final order from the bench but not setting it forth in a separate, docketed document. The real issue on this appeal is whether the failure of the bankruptcy court to follow the procedures establishing the separate document requirement required the bankruptcy court to relieve appellant from its final order, pursuant to Bankruptcy Rule 9024.[11]

■ The sole purpose of the separate document requirement is to definitively establish when time for appeal begins to run. *In re Colley,* 818 F.2d 443, 444 (5th Cir. 1987) (per curiam). In other words, the separate document requirement is not

---

9. In relevant part, Rule 9022(a) provides:

Immediately on the entry of a judgment or order the clerk shall serve a notice of the entry by mail ... on the contesting parties and on other entities as the court directs.... Service of the notice shall be noted in the docket. Lack of notice of the entry does not affect the time for appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 8002. Fed. R. Bankr.P. 9022.

10. It is interesting to note that, largely due to the frequent recurrence of the type of procedural error the bankruptcy court made in this case, Rule 58 of the Federal Rules of Civil Procedure was amended in 2002 to delete language providing that "[a] judgment is only effective when so set forth [in a separate document] and entered as provided by Rule 79(a)." *See* Fed.R.Civ.P. 58 (2001). In making the 2002 amendments, the Advisory Committee "discard[ed] the attempt to define the time when judgment becomes 'effective'" because the "simple separate document require-

ment has been ignored in many cases." Fed. R.Civ.P. 58 advisory committee's note, 2002 Amendments (2003). Nonetheless, Bankruptcy Rule 9021 has not been amended. It still provides that judgment is effective "when entered as provided in rule 5003." Fed. R. Bankr.P. 9021. Therefore, the proper procedure for the bankruptcy court to follow is to set forth each final order on a separate document on the day the order is rendered, and for the clerk to note the entry of that order on the publicly available bankruptcy docket.

11. The court notes that the relevant issue is *not* whether such a procedural error would provide a basis for reversal on direct appeal. Appealing a motion for reconsideration under Rule 60(b) is not a means to obtain complete review of the proceedings below where timely notice of appeal was not filed. *Polites v. United States,* 364 U.S. 426, 437, 81 S.Ct. 202, 5 L.Ed.2d 173 (1960). Instead, on review of a Rule 60(b) motion, the court's inquiry is limited to the specific bases for relief provided by that Rule. *Id.* Mere procedural error in the court below is not one of them.

meant to restrain judges' ability to issue immediately effective final orders. Moreover, an appeal from the denial of a motion for reconsideration cannot be used to enforce the separate document requirement, which is waived if no timely objection is made. *See id.* at 444–45 (holding that appellant waived its right to a separate document by failing to appeal the underlying judgment). Appellant had the opportunity to challenge the procedures applied by the bankruptcy court by timely filing notice of appeal of the June 2, 2003 Order, but failed to do so. Therefore, appellant has waived its right to have the bankruptcy court's judgment entered on a separate document.

### A. The Denial of Appellant's Motion on the Basis of Rule 60(b)(1) Was Not an Abuse of Discretion

█ Rule 60(b)(1) provides the trial judge with the discretionary authority to relieve a party of a final order for "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). Generally, this Rule is used to relieve a party from its own errors. The bankruptcy court's September 25, 2003 Memorandum Opinion and Order analyzed appellant's motion as such and found that appellant's failure to make an election on or before May 23, 2003 was not the result of excusable neglect. (Mem. Op. and Order, Sept. 25, 2003, at 10.) Appellant has not challenged the bankruptcy court's Rule 60(b)(1) analysis. Instead, appellant claims that under Rule 60(b)(1), the bankruptcy court should have granted appellant relief from the bankruptcy court's own mistake in entering the June 2, 2003 Order, which contained an election date that had already passed.[12]

█ In some cases, courts have used Rule 60(b)(1) to relieve a party from the court's own error. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2858, at 293–94 (2d ed.1995). However, the only reason to use Rule 60(b)(1) in this manner is to save judicial resources by eliminating the need for the appellate court to review and reverse where the trial court recognizes its own error in applying the relevant law. *See Oliver v. Home Indem. Co.*, 470 F.2d 329, 330 (5th Cir. 1972). It is not an avenue for a dissatisfied party to obtain review of a trial court's final order after the time for appeal has expired. *United States v. McCoy*, 198 F.Supp. 716, 723 (D.N.C.1961). For that reason, relief under Rule 60(b)(1) based on an error of law is not available after the time for appeal has run. *See* 11 Wright, Miller & Kane, § 2858, at 296–97.

Appellant argues that the court was mistaken in entering the June 2, 2003 Order because (1) the order required appellant to make an election before its right to elect had accrued, and (2) appellant could not have made a timely election under the Order because it set a deadline that expired before the written order was entered. (Appellant's Br. on Appeal, at 10–13.)

█ First, the June 2, 2003 written Order did not require appellant to make an election before its right to elect had accrued under the Bankruptcy Code. It was a procedurally defective written order confirming a valid and final order made from the bench by the bankruptcy judge on May 7, 2003. Appellant correctly argues that, under 11 U.S.C. § 365(n)(1)(B), "the right of a licensee to elect to retain rights under

---

**12.** In its brief on appeal, appellant argues that the bankruptcy court's Rule 60(b)(1) analysis was based on "irrelevant" evidence because

appellant was under no duty to elect prior to June 2, 2003. (Appellant's Br. on Appeal, at 12.)

an intellectual property agreement arises upon rejection of the executory contract and not before it." (Appellant's Br. on Appeal, at 10.) Appellant is further correct that rejection becomes effective only upon court approval. *See In re Revco D.S., Inc.*, 109 B.R. 264, 267–70 (Bankr. N.D.Ohio 1989). But appellant's further assertion that a court's approval is effective only upon entry of a written order is incorrect. Rejection is effective as soon as it is approved by the court. A bench ruling in open court at the completion of a hearing on the motion to reject is sufficient to make rejection effective. *See In re Va. Packaging Supply Co.*, 122 B.R. 491, 494 (Bankr.E.D.Va.1990) (holding that debtor's rejection of non-residential lease was effective for purposes of lessee's election rights upon bench ruling approving rejection); *see also Revco*, 109 B.R. at 267 (holding same). Thus, rejection of the Licensing Agreement was effective on May 7, 2003. Though the bankruptcy court should have entered a written final order on May 7, 2003, confirming this bench ruling, the fact that the written order was not entered until June 2, 2003, did not require appellant to make its election before its right to elect had accrued.

Second, and for essentially the same reasons, the June 2, 2003 Order did not require appellant to do the impossible. On May 7, 2003, the bankruptcy court ordered that the date for election pursuant to 11 U.S.C. § 365(n)(1)(B) be set for May 23, 2003. That oral order was effective immediately and a separate document confirming it should have been docketed that day. The fact that it was not, however, did not make compliance with the order itself impossible. It resulted only in procedural confusion due to the fact that the written order that should have been docketed on May 7, 2003, was not entered until June 2,

2003. Such a procedural error is not the type of court-made "mistake" upon which relief under Rule 60(b)(1) is necessarily required. Given that appellant had actual knowledge of the court's May 7, 2003 final ruling before the election date of May 23, 2003, and notice of the May 7, 2003 hearing,[13] it was not an abuse of discretion for the bankruptcy judge to deny relief under Rule 60(b)(1).

**B. *The Bankruptcy Court's Order Was Not Void under Rule 60(b)(4)***

Under Rule 60(b)(4), "a judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or it acted in a manner inconsistent with due process of law." *Carter*, 136 F.3d at 1006. Thus, if the setting of the May 23, 2003 election deadline violated appellant's due process rights, then under Rule 60(b)(4) the court may relieve appellant from the order setting that deadline. Appellant argues that the June 2, 2003 Order was entered in violation of due process because it stated that the deadline for § 365(n)(1)(B) election had already passed. Again, appellant's argument fails because the relevant date is May 7, 2003, not June 2, 2003.

Importantly in this case, "[m]erely erroneous procedure and notice … will not suffice for Rule 60(b)(4) relief unless the circumstances cross over the line from mere error to error that violates the due process clause of the Fifth Amendment." *In re Loloee*, 241 B.R. 655, 660 (9th Cir. BAP 1999). The Due Process Clause of the Fifth Amendment entitles parties whose property interests are at stake in a judicial proceeding to "notice and an opportunity to be heard." *Dusenbery v. United States*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (cita-

---

13. *See supra* at 804.

tion omitted). Notice is adequate for Fifth Amendment due process purposes if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Id.* at 168, 122 S.Ct. 694 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

Appellant does not contest that it received adequate notice of the May 7, 2003 hearing and was given a fair opportunity to be heard there. Instead, appellant argues that its due process rights were violated because (1) it was not given adequate notice of the court's decision to set the May 23, 2003 deadline for election, and (2) compliance with the written order was impossible because it set a deadline that had already passed. Both of appellant's arguments fail. The June 2, 2003 Order did not violate the Due Process Clause of the Fifth Amendment; it was a procedurally defective written document confirming the bankruptcy court's immediately effective May 7, 2003 bench order.

■ As to appellant's first argument, appellant cannot create a due process issue by choosing not to attend a bankruptcy hearing that will dispose of its "largest and most valuable asset" and then by ignoring the fact that the court fully adjudicated its rights as to that asset in its absence. Due process requires that interested parties be given *notice* of the hearing and an *opportunity* to be heard prior to the court rendering a decision. *See, e.g., Dusenbery,* 534 U.S. at 167, 122 S.Ct. 694. In other words, the Fifth Amendment requires notice of the pendency of the action, not of the result. *Id.* at 168, 122 S.Ct. 694. The Constitution does not require the court to ensure that all parties that voluntarily skip such a hearing be provided with immediate notice of what took place there. On May 7, 2003, the bankruptcy judge held a hearing and ordered that May 23, 2003, be set as the final date on which appellant could file written notice of its desire to retain its rights under the Licensing Agreement. Notice of that hearing and a fair opportunity for appellant to be heard at that hearing is all that due process requires. Appellant cannot immunize itself from the effects of an order issued at that hearing by choosing not to attend.[14] Moreover, appellant received actual notice of the order in time to comply.[15]

Further, the fact that compliance with the written order was technically impossible was not a violation of due process because actual compliance was not impossible.[16] The bankruptcy judge ordered that May 23, 2003, be set as the last day for appellant to make its election at the May 7, 2003 hearing. Appellant, aware that the May 7, 2003 hearing was set to determine this issue, could have confirmed that the May 23, 2003 date was set at any

14. *See supra* at 804.

15. *See supra* at 804.

16. Appellant cites *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), for the proposition that where compliance is impossible, a court order violates due process. That is not exactly what the court in *Maggio* held. Rather, in *Maggio,* the Court vacated and remanded the district court's order adjudging a trustee in bankruptcy to be in contempt for failure to comply with a turnover order,

where the evidence showed that the trustee was no longer in possession of the property at the time the court found him in contempt. *Maggio,* 333 U.S. at 77–78, 68 S.Ct. 401. Thus, the situation in *Maggio* is not similar to the circumstances in this case, where, at the time of the bankruptcy court's order on May 7, 2003, appellant was fully capable of compliance. Moreover, the Court's opinion in *Maggio* was based on principles of "good judicial administration," not due process. *Id.* at 77, 68 S.Ct. 401.

time after May 7, 2003, by simply contacting the bankruptcy clerk. Further, appellant was informed that the May 23, 2003 date had been set at the latest by May 20, 2003, when it received a copy of the proposed written order. Given that the Licensing Agreement was appellant's "largest and most valuable asset," the decision to elect to retain its rights under the Licensing Agreement should not have been a difficult one.[17] Compliance certainly was not impossible. Therefore, this due process argument fails.

C. *The Denial of Appellant's Motion on the Basis of Rule 60(b)(6) Was Not an Abuse of Discretion*

 Finally, under Rule 60(b)(6), the court may relieve a party or its representative from an order for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). The broad language of this Rule "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," but the Rule "should only be applied in 'extraordinary circumstances.'" *Liljeberg v. Health Svcs. Acquisition Corp.*, 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (internal citations and quotations omitted). Courts have found such "extraordinary circumstances" to be present in few cases. *See, e.g., Liljeberg,* 486 U.S. at 864, 108 S.Ct. 2194 (holding that "extraordinary circumstances" do not necessarily exist in all cases where presiding judge had an interest in the outcome of a bench trial). Moreover, several cases have held that Rule 60(b)(6) may not be used to relieve a party from its own failure to protect its interests. *See, e.g., Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950) ("There must be an end to litigation some day, and free, calculated, deliberate choices are not to be relieved from."); *Jardine, Gill & Duffus, Inc. v. M/V Cassiopeia,* 523 F.Supp. 1076, 1085 (D.Md.1981) ("[R]elief is generally unavailable under Rule 60(b)(6) when the moving party has failed to take legal steps to protect his interests.").

This case does not present "extraordinary circumstances" of the kind that necessitate relief under Rule 60(b)(6). In fact, though the June 2, 2003 Order was procedurally defective, what transpired in the bankruptcy court was quite ordinary.[18] Positive Changes filed a voluntary Chapter

---

**17.** The real flaw in this due process argument is that it is predicated on the assertion that the May 23, 2003 deadline was only a "proposed deadline" until the written order of June 2, 2003 was entered. As previously stated, this assertion is erroneous. *See supra* at 809. On April 8, 2003, when Positive Changes filed its motion to reject, May 23, 2003, was the deadline it proposed that the court set for election under § 365(n)(1)(B). Appellant received notice of this "proposed deadline" when Positive Changes mailed to it a copy of the motion to reject and a copy of the notice of hearing. The May 23, 2003 date ceased to be a "proposed deadline" and became the actual deadline on May 7, 2003, when the bankruptcy judge granted Positive Changes' motion and set that date as the last day on which licensees could elect under § 365(n)(1)(B). Appellant had every opportunity to comply with this order.

**18.** The court notes that if appellant had not received any notice of the bankruptcy court's May 7, 2003 final order, the use of Rule 60(b)(6) to relieve appellant from its duties under that order may have been appropriate. *See* Wright, Miller & Kane, § 2864, at 353–55 ("The most common 'other reason' for which courts have granted relief is when the losing party fails to receive notice of the entry of judgment in time to file an appeal.... However, courts have denied relief in cases which notice was not received if counsel is deemed to have been negligent in keeping apprised of the state of the case."). In this case, relief under Rule 60(b)(6) was not required because appellant received actual notice of the May 7, 2003 ruling.

11 petition in the bankruptcy court on February 7, 2003. Pursuant to 11 U.S.C. § 365(a) and Bankruptcy Rule 6006(a), Positive Changes filed a motion to reject certain executory contracts on April 8, 2003, and sent adequate notice to all interested parties of its motion. The bankruptcy court set a hearing to resolve the matter for May 7, 2003, and all interested parties were given notice of this hearing in mid-April. On May 7, 2003, the hearing was held and the bankruptcy judge resolved the matter, ordering that the Licensing Agreement be rejected and setting a deadline for appellant to retain its rights under the agreement of May 23, 2003. Appellant chose not to attend the May 7, 2003 hearing and not to make even a phone call to the bankruptcy clerk or an inspection of the publicly available bankruptcy docket to determine its outcome. Despite actual notice that the bankruptcy judge had set the May 23, 2003 deadline at the hearing at the latest by May 20, 2003, appellant still chose not to act on it until May 29, 2003, six days after the deadline had expired. Rule 60(b)(6) does not require the bankruptcy judge under these circumstances to relieve appellant from its own failure to protect its interests. In other words, the bankruptcy judge did not abuse his discretion under Rule 60(b)(6).

### IV. Conclusion

For the reasons stated above, the bankruptcy court's September 25, 2003 Order denying appellant relief under Federal Rule of Bankruptcy Procedure 9024 is **AF-FIRMED**. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record and to the Bankruptcy Court.

**IT IS SO ORDERED.**